## WILLIAMS, *v.* NOTTAWA.

1. Under the fifth section of the act of March 3, 1875, c. 137 (18 Stat., pt. 3, p. 470), it is the duty of the Circuit Court to dismiss a suit when it appears that the parties thereto have been improperly or collusively made or joined for the purpose of creating a case cognizable under that act.

2. A., a citizen of Indiana, sued in the Circuit Court a township of Michigan upon certain bonds issued by it and payable to bearer. He owned some of them, and the others were transferred to him by citizens of Michigan solely for the purpose of collection. Judgment was rendered in favor of the township on the bonds so transferred, and in his favor for the residue. This court, on his removing the case here, reverses the judgment, and directs, as the court below should on its own motion have done, that the suit be dismissed at his costs.

3. *Quære*, Could the defendant, not a party to such collusion, take advantage, for the first time, on appeal or writ of error, of such objection.

ERROR to the Circuit Court of the United States for the Western District of Michigan.

The facts are stated in the opinion of the court.

Submitted on printed arguments by *Messrs. Hughes, O'Brien, & Smiley* for the plaintiff in error, and by *Mr. Charles Upson* for the defendant in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This suit was brought by Williams, a citizen of Indiana, against the township of Nottawa, a municipal corporation of Michigan, to recover the amount alleged to be due on certain of its bonds, negotiable by the law merchant, and payable to Samuel Kline, or bearer. A trial was had by a jury, which resulted in a verdict, by the direction of the court, in favor of Williams for six of the bonds, and in favor of the township for the remainder. This writ of error has been brought by Williams to reverse the judgment against him; and, as the court directed the verdict which was rendered, the whole of the evidence has been embodied in the bill of exceptions, and is properly before us for consideration.

From the testimony of Williams himself, it distinctly appears he was personally the owner of only three of the bonds

sued on of $100 each. One Bracey Tobey was the owner of three others of the same amount. The judgment in favor of Williams was upon these six bonds, and for $994.57 only. All the other bonds, being those on which the judgment was rendered in favor of the township, were owned by Samuel Kline and William Connor, both of whom were residents of the township and citizens of Michigan when the bonds were issued. There is no evidence of any change of citizenship by Kline since the bonds were delivered, and Connor, who was a witness at the trial, testified that he continued to be a citizen of Michigan. The bonds were transferred by Kline and Connor to Williams simply for the purpose of collection with his own. The same is true of those belonging to Tobey; but there is nothing in the evidence to show of what State he was a citizen, though he testified that he bought his bonds in Michigan.

By sect. 11 of the Judiciary Act of Sept. 24, 1789, c. 20 (1 Stat. 78), it was expressly provided that the District and Circuit Courts of the United States should not "have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange." By sect. 1 of the act of March 3, 1875, c. 137 (18 Stat., pt. 3, p. 470), this provision was so far modified as to extend the exception to "promissory notes negotiable by the law merchant and bills of exchange," but in sect. 5 it was expressly enacted "that if in any suit commenced in a Circuit Court . . . it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been brought, . . . that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable . . . under this act; the said Circuit Court shall proceed no further therein, but shall dismiss the suit, . . . and shall make such order as to costs as shall be just."

This case, so far as the bonds owned by Kline and Connor

are concerned, comes clearly within this prohibition. As the actual owners of the bonds were citizens of Michigan, they could not sue in the courts of the United States, and Williams distinctly testifies that he received and held their bonds solely for the purpose of collection with his own, and for their account. It cannot for a moment be doubted that this was done " for the purpose of creating a case " for Kline and Connor cognizable in the courts of the United States. That being so, it was the duty of the Circuit Court to dismiss the suit as to these bonds, and proceed no further; for as to them the controversy was clearly between citizens of the same State, Kline and Connor being the real plaintiffs. The transfer to Williams was colorable only, and never intended to change the ownership. This both Williams and Kline and Connor knew. Under the act of 1789, it was held in *Smith* v. *Kernochan* (7 How. 198) that this objection was one which could only be taken by plea in abatement; but in *Barney* v. *Baltimore* (6 Wall. 280) there was no such plea, and the bill was dismissed in this court without prejudice, because it appeared in evidence that certain conveyances, by means of which the citizenship of the parties was changed so as to give the courts of the United States jurisdiction, did not transfer the real interest of the grantors. But whatever may have been the practice in this particular under the act of 1789, there can be no doubt what it should be under that of 1875. In extending a long way the jurisdiction of the courts of the United States, Congress was specially careful to guard against the consequences of collusive transfers to make parties, and imposed the duty on the court, on its own motion, without waiting for the parties, to stop all further proceedings and dismiss the suit the moment anything of the kind appeared. This was for the protection of the court as well as parties against frauds upon its jurisdiction; for as was very properly said by Mr. Justice Miller, speaking for the court, in *Barney* v. *Baltimore* (*supra*), such transfers for such purposes are frauds upon the court, and nothing more.

It is clearly shown, also, that Williams and Tobey were collusively joined as plaintiffs, to create a case cognizable in the Circuit Court; for when the suit was begun the amount

due them respectively was less than $500. Neither ne of them could then have sued alone in the courts of the United States, because the value of the matter in dispute was not sufficient.

Since the judgment below was rendered, the amount due Williams and Tobey respectively has, by reason of the accumulation of interest, exceeded $500. The citizenship of Tobey is not disclosed by the record. Whether he can sue in the courts of the United States we do not know. Williams can sue at this time if he still continues to be a citizen of some State other than Michigan, but without a false averment in his pleadings he could not have done so when this suit was begun. If he had in his pleadings falsely overstated the amount of his claim, he could not, when his judgment was obtained, have recovered costs, and at the discretion of the court might have been adjudged to pay costs. Gordon v. Longest, 16 Pet. 97. He was as much guilty of collusion as the other parties, and is no more entitled to consideration here than they are.

Inasmuch, therefore, as it was the duty of the Circuit Court, on its own motion, as soon as the evidence was in and the collusive character of the case shown, to stop all further proceedings and dismiss the suit, the judgment is reversed, and the cause remanded with instructions to dismiss the suit at the costs of the plaintiff in error, because it did not really and substantially involve a dispute or controversy within the jurisdiction of that court, leaving the parties in interest to such remedies as they may each be entitled to for the recovery of any amount that may be due them respectively on the bonds they severally own. In this connection we deem it proper to say that this provision of the act of 1875 is a salutary one, and that it is the duty of the Circuit Courts to exercise their power under it in proper cases. If they improperly dismiss a cause, their action in that behalf is expressly made reviewable here. Whether, if a defendant allows a case to go on until judgment has been rendered against him, he can take advantage of the objection on appeal, or writ of error, we need not now decide. That would be a different case from this. Here the party guilty of the collusion asks relief from a judgment against

himself. In such a case we deem it our duty to stop the suit just where it should have been stopped in the court below, and remit the parties to their original rights.

*Judgment reversed.*