## NORTHERN INS. CO. v. ST. LOUIS & S. RY. CO.[*]

*(Circuit Court, E. D. Missouri. March 26, 1883.)*

1. JURISDICTION OF CIRCUIT COURT—ACT OF MARCH 3, 1875.

An assignee of a non-assignable cause of action cannot maintain a suit thereon before a circuit court where his assignor could not have done so.

2. SAME—ASSIGNMENT OF CAUSES OF ACTION ARISING ON TORTS.

The act of 1875 does not abrogate the common-law rule as to assignment of causes of action arising on torts.

Demurrer to the Petition.

*F. M. Estes,* for plaintiff.

*Noble & Orrick,* for defendant.

TREAT, J. The only question to be considered is jurisdictional. Certain persons, insured by a fire risk, sustained a loss through the alleged wrongful acts of the defendant; their underwriter paid the loss and took an assignment of their rights of action against the defendant. The assignors (the persons insured) were and are citizens of the same state as the defendant. The sole question is whether the plaintiff, as assignee of such a cause of action, by subrogation or otherwise, can sue in a United States court in its own name, the assignee being a citizen of this state?

It is not proposed to review the many cases decided under the acts of 1789 and 1875, but merely to state generally the views held by this court. Under the act of 1789, it is conceded, no assignee or assignor to the use of the assignee of a cause of action like that under consideration could maintain the right of action in a United States circuit court. Under its provisions no assignee could proceed in a United States circuit court when the assignor could not, excepting only "in case of foreign bills of exchange." So stood the law until the act of 1875, whereby the jurisdiction was greatly enlarged as to citizenship of the parties, yet containing this provision: "Nor shall any circuit or district court have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon if no assignment had been made, except in cases of promissory notes negotiable by the law-merchant and bills of exchange."

The act of 1789 gave jurisdiction when a suit was between a citizen of the state where it was brought and a citizen of another state, with a proviso that no cognizance should be had of "any suit to re-

*Reported by B F. Rex, Esq., of the St. Louis bar.

cover the contents of any promissory note or other chose in action in favor of an assignee unless a suit might have been prosecuted in such court to recover said contents if no assignment had been made, except in cases of foreign bills of exchange." The proviso in the act of 1875 so far enlarged the act of 1789 as to embrace all negotiable promissory notes under the law-merchant, and all bills of exchange.

The history of judicial decisions, from the case of *Swift* v. *Tyson*, 16 Pet. 1, down to *Goodman* v. *Simonds*, 20 How. 343, and illustrated by the many cases of municipal bonds, will serve to show the scope of the enlarged provisions of the act of 1875, so far as commercial paper is concerned. It is contended that inasmuch as by the act of 1789 jurisdiction was conferred, with the exceptions therein enumerated, of all cases between a citizen of the state where brought and a citizen of another state, therefore the jurisdiction by the act of 1875 was enlarged to cover all controversies between citizens of different states, with only the exception stated in the proviso of the latter act.

In the act of 1789 one of the parties must have been a citizen of the state where suit was brought, and in the act of 1875 difference of citizenship was alone necessary. In the act of 1789, despite citizenship, no suit could be brought "in favor of an assignee" on a promissory note or chose in action, except, etc. As the law then stood, and as it now stands, in many states, the assignee, in ordinary choses in action, cannot sue in his own name, but must sue in the name of the assignor, to his own use. In some states that rule has been changed so that the real party in interest may sue.

Was it intended by the act of 1875 to abrogate the rule as to the assignments of causes of action on torts, so that an assignee thereof might sue in a United States circuit court, while restricting assignees of choses in action under contracts to a more stringent rule? It is true, the formal language of the act of 1875 is less restrictive than that of 1789, but it is also true that many states by express enactment enforce the common-law rules as to the non-assignability of actions for torts. Where they are non-assignable, only the person wronged can sue, and jurisdiction will be determined accordingly. Such is this case. The Missouri statute, in permitting the real party in interest to sue, declares that the statute "shall not be deemed to authorize the assignment of a thing in action not arising out of contract." Hence there could not, *a fortiori*, be an assignment of the tort in question whereby the assignee could maintain a suit in its own name in the United States court. 74 Mo. 521; 13 Wall. 367.

There may possibly be cases elsewhere under assignments of torts

where the assignee can sue in his own name. Under such a state of the law the question might become doubtful where the two acts in question are to be construed. The act of 1789 covered cases where the assignee had to sue in the name of the assignor. The manifest intent of the law was to leave such parties to the forum where their causes of action arose. Was it, then, the purpose of the act of 1875 to permit assignees of all causes of action, unless founded on contract, to pursue their supposed rights in federal courts in their own names, whether the causes of action were or were not assignable? It is said some circuit courts, laying special stress on the omission in the act of 1875 of the general words "choses in action" contained in the act of 1789, have intended that assignees of *all* rights of action, except those founded on contracts, may now proceed in the United States courts when difference of citizenship exists. If there are such cases, they fail to observe the general doctrines as to "choses in action," and the common-law right to sue thereon, and the manner in which such suits should be brought. But no case cited goes to the extreme claimed by plaintiff. If suits are brought, as under the old rule, in the name of the assignor, no difficulty occurs, for the act of 1875 is, in this respect, in full accord with the act of 1789. It is only on the hypothesis that an assignee may sue in his own name, as permitted by many state statutes, that a difficulty arises.

It is, however, to be supposed that congress had in view the general law, and not the special-practice acts of one or more states. Hence, if an assignee, claiming the right to sue in his own name, brings suit when his assignor could not do so, his right so to do cannot be upheld, irrespective of the rule as to collusive proceeding. 104 U. S. 209. Especially must this be the case when the Missouri statute governs. It was not the purpose of the acts of congress to change the nature of obligations and to declare those assignable which under the local laws were non-assignable. Those acts were not designed to create or transfer or legislate upon rights of parties, but only, within the limits prescribed, to permit parties thereto to have their controversies heard in United States courts. When a chose in action is by the local law assignable, and suit is brought by the assignor to the use of the assignee, or by the assignee, then the jurisdictional question is the same as under the act of 1875, except as to promissory notes, etc.

The act of 1875, in referring to suits founded on contracts, does not intend to change the rule in the act of 1789 by distinguishing between choses in action founded on contract, so as to exclude them,

and so-called choses in action founded in tort, which are generally non-assignable, so as to admit the latter. Any other view would be subversive of the entire spirit of the federal statutes, and even call for such an interpretation of them as would make non-assignable causes of action assignable in quality and for jurisdictional purposes,— an interpretation inconsistent with all sound rules of law as heretofore understood and enforced. The causes of action sued on are, under the Missouri statute, non-assignable, and therefore the plaintiff cannot maintain this suit. Demurrer sustained.

McCRARY, C. J., concurs.