BRIGGS v. TRADERS' CO. et al.

(Circuit Court, N. D. West Virginia.    April 17, 1906.)

1. COURTS—JURISDICTION OF FEDERAL COURTS—MANNER OF RAISING QUESTION
OF JURISDICTION.
Under section 5 of the federal judiciary act of March 3, 1875, c. 137,
18 Stat. 472 [U. S. Comp. St. 1901, p. 511], which requires a Circuit Court
to dismiss or remand a suit if it shall appear at any time that the court
is without jurisdiction or that the parties have been improperly or collu-
sively made or joined, it is immaterial in what manner or by what plead-
ing the question is raised.
[Ed. Note.—For cases in point, see vol. 13. Cent. Dig. Courts, § 818.]

2. SAME—DISCRETION OF COURT.
If the want of jurisdiction of a Circuit Court appears from the face
of the bill, it is the duty of the court as soon as its attention is called to
the fact or it is discovered, no matter how far the cause has progressed
to place the parties as nearly as possible in statu quo and to dismiss the
suit; but if the want of jurisdiction does not appear on the face of the
bill or from the record but the objection is based on alleged extrinsic
facts, it is the duty of the court to exercise its discretion in determining
whether or not in the then condition of the cause and in view of the re-
lations existing between the parties by reason of the proceedings al-
ready taken therein, it will permit such issues of fact to be raised.
[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 818.]

3. CORPORATIONS—SUIT BY STOCKHOLDER.
A suit in a federal court by a stockholder against the corporation al-
leging that it has ceased to actively conduct its business or to elect
officers or directors and that it is largely indebted and asking the ap-
pointment of a receiver and a winding up of its affairs is not one founded
on rights which may properly be asserted by the corporation within
the meaning of equity rule 94, and complainant need not show that he
has complied with its requirements.

4. SAME—SUIT FOR DISSOLUTION—WEST VIRGINIA STATUTE.
Under Code W. Va. 1899, c. 53, § 58, which authorizes a court on ap-
plication of a creditor or stockholder to appoint a receiver to administer
the assets of a corporation "upon sufficient cause being shown therefor,"
a stockholder may maintain a suit in a federal court on behalf of him-
self and other stockholders for the dissolution of the corporation and
distribution of its assets, where the requisite diversity of citizenship ap-
pears, and it is alleged in the bill that the corporation has ceased to do
business and is taking no action towards payment of its debts or the pro-
tection of its property, and other stockholders and creditors need not be
joined as parties where it is alleged that they are unknown to complain-
ant.

5. COURTS—OBJECTION TO JURISDICTION—LACHES.
Where a stockholder's suit for dissolution of a corporation, brought
in a federal court, and of which such court had jurisdiction on the face
of the record, had proceeded for 16 months, during which time a re-
ceiver had been appointed who had collected the assets of the corporation
and made an advantageous sale of its property, and the claims of credit-
ors had been proved, a nonparticipating creditor which in the meantime
with knowledge of the suit proceeded in a state court and obtained a
judgment against the corporation will not be permitted to intervene
after such lapse of time to raise an issue of fact upon the question of
jurisdiction in respect to which it does not claim to have any more
knowledge or information than it had when the suit was commenced

In Equity.

On August 3, 1904. the plaintiff Briggs filed his bill in equity against the Traders' Company. a corporation, and John Koblegard and Burton M. Despard. trustees, in which he alleges himself to be a citizen of New York and the defendants of West Virginia; that he is a stockholder of defendant company to the extent of 50 shares of the par value of $5,000; that the company is the owner of a 50-year lease of a lot of ground in Clarksburg, W. Va., upon which it has erected a large building for use as a hotel, opera house, storerooms, and a banking room, which latter has been leased by it to the Traders' National Bank for a term of 16 years, with privilege of renewal: that the operations of said company have not been profitable, but its business for several years has been conducted at a loss and large indebtedness accumulated; that on January 29, 1895, it executed to the defendants Koblegard and Despard and to one Clifford now deceased, a first mortgage on the property to secure bonds which were sold and that besides this indebtedness, other large debts to persons unknown to plaintiff are due aggregating a total of $45,000. that for a year or more preceding the filing of this bill, the officers and directors had ceased to take any part or lot in the conduct or management of said company's affairs, had held no meetings of directors or stockholders, and no new officers had been elected; that rentals have been permitted to go unpaid, no effort is made to collect them, that no active head, board of directors or governing body exists for said corporation to whom plaintiff as a stockholder could apply for relief, that default has been made under the terms of the mortgage sale under it advertised by the trustees, the general indebtedness is unascertained; that a large amount of personal property is in the hotel which ought to be sold with it or otherwise it would be sacrificed; that judgments are being obtained and executions issued against it. The prayer is to stay the sale by the trustees, appoint a receiver, ascertain the debts and their priorities and generally adjust the affairs of this company. This bill was presented, it appears, in open court, and the same day it was filed, an order was entered granting the injunction and appointing a receiver to take charge of the property.

On September 13, 1904, by order entered before any appearance by parties, the plaintiff was allowed to amend his bill by inserting in the first paragraph the words "On behalf of himself and all other stockholders who may come in and join in said suit," and by the same order one J. M. Hustead filed his petition, and was admitted a party plaintiff, alleging therein himself to be and to have been when the transactions occurred a nonresident of West Virginia, and the holder of 10 shares of the capital stock of said corporation, and the allegations of the bill to be true. Various orders were from time to time entered, providing for the operation and lease of the opera house, the hotel, accepting the resignation of the receiver and the appointment of another, the reference of the cause to a special master to ascertain debts, etc., and permitting and directing sales of the property to be made by the trustees in the mortgage of part of said corporation's property, and of the residue by Special Commissioner John W. Davis. The latter made and reported a sale of the banking room, which, upon upset bid, was set aside, and a new sale ordered made and reported, which is now asked to be confirmed.

In this condition of affairs, on November 25, 1905, the Bank of the Monongahela Valley, a West Virginia corporation, was permitted to file its petition in the cause in which it alleges itself to be a creditor of said Traders' Company, evidenced by a judgment recorded against it, T. Moore Jackson and Fleming Howell for $9,793.50 and $19.20 costs on October 5, 1904, in the Circuit Court of Harrison county, W. Va., that the action upon which said judgment was founded was commenced on April 19, 1904, prior to the institution of this Brigg's suit in this court, but judgment was delayed by reason of pleas entered by the defendants; that the term of court at which said judgment was rendered commenced on September 13, 1904, and the judgment relates back as of that day when said petitioner acquired under the law a judgment and execution lien upon the property of said Traders'

Company; that Howell is bankrupt, and Jackson insolvent, and neither have property out of which said judgment can be made; that but for the institution of this suit and the appointment of a receiver therein, on September 3, 1904, it would have all the property of said Traders' Company bound for its said judgment and execution lien. It thereupon assails the jurisdiction of this court and its right to suffer the maintenance of this suit upon legal grounds appearing upon the face of the bill and proceedings, and further charges as a matter of fact that the plaintiff Marsenus H. Briggs never in fact owned any stock or interest in the Traders' Company, but colluded with one John T. McGraw whereby the stock owned by the latter was assigned to said Briggs for the sole and only purpose of giving the said Briggs a nonresident citizen (McGraw being a resident one) a colorable right to institute this suit; that he in fact never had any legal right to institute it, and this court no jurisdiction to maintain it; that all orders and decrees entered in it are void and of no effect; that although its suit was pending in the state court at the time of the institution of this one and the plaintiff had knowledge of it and of the petitioner's debt, he did not make petitioner party to this suit because he did not desire to allow plaintiff to make defense thereto and destroy his right to maintain this cause. The prayer of this petition is that petitioner may be made a defendant, may be permitted to demur and plead to said bill, and if deemed necessary, be permitted to file its answer thereto; that Briggs be required to state under oath just when and how, and for what purpose, he obtained possession of the 50 shares of stock; that all orders entered in this cause be vacated and the cause be dismissed for want of jurisdiction, and that its debt be satisfied out of the proceeds of the sale of the property of the said Traders' Company.

The order allowing this petition to be filed, entered on November 25, 1905, recites that "it appearing * * * that the petitioner * * * is materially interested in the matters in controversy in this cause, and in any proceeds arising from the sale of the property of the Traders' Company, it is therefore ordered that the said petition be, and the same is hereby, filed, and the Bank of the Monongahela Valley, on its motion, is made a party defendant to this cause, and given leave to plead, demur, answer, and make any proper defense to the bill in this cause."

Davis & Davis, M. D. Post, and Johnson & Hoffheimer, for plaintiff and intervening creditors.

Sperry & Sperry, for petitioner, the Monongahela Bank.

DAYTON, District Judge (after stating the facts as above). The plaintiff's counsel earnestly insist this petition of the Bank of the Monongahela Valley should not be considered but dismissed from consideration, because it was filed by order in November, 1905, which made the petitioner a party defendant and granted it leave to demur, plead, answer, or make other defense to the bill. It has neither pled to nor answered the bill, but on March 7, 1906, an order was entered formally filing a demurrer to the bill, which was therein recited to have been tendered at a special term of the court held in the month of December, and at the same time a motion was submitted by said petitioner to dismiss the plaintiff's bill for the reasons set forth in its said petition. Plaintiff insists that several rule days having passed without the formal entry of any demurrer, plea, or answer, that the bill should stand pro' confesso. I cannot concur in these views for these reasons: Prior to the act of 1875 the common-law rules touching the necessity of a plea in abatement to the jurisdiction prevailed in the federal courts, and it was held that the filing of a plea to the merits was a waiver of such plea to

the jurisdiction. Farmington v. Pillsbury, 114 U. S. 138, 143, 5 Sup. Ct. 807, 29 L. Ed. 114. This act of March 3, 1875 (18 Stat. 472, c. 137, § 5 [U. S. Comp. St. 1901, p. 511, tit. 13, c. 7, § 629]), provides that if at any time after suit brought or removed it appears "that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed as justice may require."

Since the passage of this act it has been held that "in its general scope this rule (enunciated in Farmington v. Pittsburg) has not been altered by the act of 1875," but this act "changed the rule so far as to allow the court at any time, without plea and without motion, to stop all further proceedings and dismiss the suit the moment a fraud on its jurisdiction was discovered." Hartog v. Memory, 116 U. S. 588, 590, 6 Sup. Ct. 521, 29 L. Ed. 725; Williams v. Nottawa, 104 U. S. 209, 211, 26 L. Ed. 719. The jurisdiction of this court cannot longer be a matter of either consent or confession. It is therefore immaterial how the question arises, whether by plea, demurrer, answer, petition, or by the court's own inspection of the record, it is the court's right, and therefore its duty to stop all further proceedings and dismiss the suit, so soon as want of jurisdiction is made to appear. The petition here is designed for one purpose and one only, that of raising the question of this court's jurisdiction, and of setting forth its substantial interest in securing a denial of it. I think it entirely sufficient for this purpose and that no further plea, demurrer, or answer to the bill was or is required.

In considering this question of jurisdiction, however, in my view, we must do so from two standpoints and with different rules governing in each case such consideration: First, if the want of jurisdiction appears from the face of the bill, then I have no hesitation in saying that no matter how far the cause has progressed or how difficult it may be to retrace the steps taken it is the duty of the court, nevertheless, to retrace those steps, place the parties as far as possible in statu quo and then dismiss the proceedings, so soon as its attention is called to or it discovers such lack of jurisdiction; second, if the want of jurisdiction does not appear on the face of the bill, and is not disclosed in the pleadings or proof, but is solely based upon the alleged facts existent, if at all, outside the record, then it is the duty of the court, I conceive, to exercise a wise discretion in determining whether or not, in the then condition of the cause and the relations existing between the parties by reason of proceedings already taken therein, it will permit such issues of facts to be raised. In this petition jurisdiction is assailed on both grounds, and we will first consider whether the bill and proceedings on their face show such want of it. It is very earnestly insisted that this bill shows that the cause is not one maintainable under equity rule

No. 94. I think this contention is absolutely sound, because the proceeding is not one by a stockholder "founded on rights which may properly be asserted by the corporation." On the contrary, it is manifestly a proceeding against the corporation even to the extent of assailing its longer right to exist. For this very reason I think it clear that the plaintiff before bringing it was not required to conform to the requirements of this rule; in short, that this rule is in no way applicable. Leo v. Union Pacific Ry. Co (C. C.) 17 Fed. 273; Ranger v. Cotton Press Co. (C. C.) 52 Fed. 611; Taylor v. Decatur M. & L. Co. (C. C.) 112 Fed. 449.

The diverse citizenship, giving jurisdiction to this court, in matters arising under state laws, is clearly set out in the bill, but petitioner earnestly insists that the suit cannot be maintained under these laws because section 57 of chapter 53 of the Code of 1899 of West Virginia requires not less than one-third in interest of the stockholders to join in a bill brought to wind up the affairs of a corporation. On the other hand counsel for plaintiff and others interested on that side strongly urge that this section of the Code does not apply; that it relates to a suit brought to dissolve a "going" concern by a minority interest in stock as for instance, where the corporation, although solvent, was no longer doing a paying or otherwise satisfactory business; and they insist this case is one authorized by section 58 of chapter 53 of said Code, which provides:

"When a corporation expires, or is dissolved or before its expiration or dissolution, upon sufficient cause being shown therefor, such court as is mentioned in the preceding section, may on application of a creditor or stockholder, appoint one or more persons to be receivers to take charge of and administer its assets; and whether such receiver be appointed or not, may make such orders and decrees and award such injunctions in the cause as justice and equity may require."

Counsel for petitioner denies the application of this statute, and insists that under it a bill would be demurrable, at least, which did not make all other stockholders and creditors parties. The question has been ably argued on both sides and a number of authorities cited. Without taking time to discuss the matter in detail, it is sufficient for me to say that while I doubt the right of a single contract creditor of a company under this last-named statute to maintain such a suit as this under the rulings in Smith v. Railroad Co., 99 U. S. 398, 401, 25 L. Ed. 437, Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 977, 37 L. Ed. 804, and Hollins v. Brierfield Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113, as contravening the seventh amendment to the Constitution, providing that the right to trial by jury shall be preserved in ascertaining these debts, which rule is strictly enforced by the federal courts regardless of all state statutes as set forth in these cases; yet I can well see how the condition of the stockholder is different. He has an interest in the property such as fulfills the prerequisite to bringing suit laid down by Justice Field in Scott v. Neely, and this interest is fixed and limited by his actual stock held. His interest is not a debt of the corporation such as could be reduced to judgment by jury trial; on the contrary, it is subordinate

to all debts, and the mere holding of it implies an obligation to creditors to preserve as far as possible the corporation's property for the benefit of such creditors. I therefore hold that where diversity of citizenship exists a suit by a stockholder under and by virtue of this statute may be maintained if the facts warrant it, and further under the rulings in Crumlish's Adm'r v. Railroad Co., 28 W. Va. 623, I am constrained to hold that the facts in this case as charged in the bill, and which seem not to have been denied, are sufficient to so warrant. Nor do I think the objection for lack of parties is sound. The bill by amendment made before appearance and by express leave of the court is filed by plaintiff on his behalf and on behalf of all the other stockholders of the company, and there is a substantial charge in it that the names of such stockholders and the creditors are to the plaintiff unknown.

Holding, therefore, that this bill on its face shows no lack of jurisdiction, and can be maintained, the next question to be considered is whether I shall permit this petitioner, The Monongahela Valley Bank, to come in at this stage of the proceeding and raise the issue of fact whether the plaintiff, Briggs, is the bona fide holder of the 50 shares of stock claimed by him, or whether he is by collusion a mere nominal holder or assignee thereof for the purpose solely of giving jurisdiction to this court. As I have indicated heretofore, this involves an exercise of wise discretion on the part of the court to be governed by the circumstances of each case that may arise. The court should promptly condemn by the penalty of dismissal any fraud committed upon its jurisdiction when such fraud appears. Yet, I conceive, it is not to presume that such fraud has been committed nor should it delay the prompt and effective determination of the parties' rights in order to make investigation of unsupported suggestions that such fraud has been committed notwithstanding the contrary has been in effect alleged by the plaintiff in the bill. Prior to the act of 1875, it is to be remembered that a person desiring to raise this question of jurisdiction in the federal court had to do so within the time and with all the technical accuracy required by a plea in abatement under common-law pleading. If he did not he was presumed to have waived objection to jurisdiction. This act was not designed to modify "the general scope of this rule" so far as the litigants were concerned, but to confer upon the court the independent power to dismiss when fraud upon its jurisdiction was apparent, notwithstanding no such plea in abatement had been by any of the parties filed, as held in Hartog v. Memory and Williams v. Nottawa, supra.

The statute, certainly, did not purpose that any suggestion of such fraud on the court's jurisdiction should delay the parties in interest to such an extent as to jeopardize or destroy the rights of numerous innocent parties which may have become ascertained and fixed by the proceedings in the cause, while the party seeking to be benefited by the disclosure stands and permits the proceeding to go on admitting that he had knowledge all the while of the fraud, yet keeping absolutely silent all the time about it. The confusion, uncertainty, and delay, not to speak of the wrongs and hardships that would spring from en-

couraging such laches, are at once apparent./ In this case this petitioner practically admits itself to have had knowledge of the existence of this suit, which, as it charges, stands in the way of the collection of its judgment, for nearly 16 months since such judgment was obtained, before it filed or attempted to file this petition.   Nor does it allege that during all that time it did not have the same knowledge of this alleged fraud upon this court's jurisdiction that it had when it filed such petition.   During that time the case here has gone on, the affairs of the corporation have been to a degree ascertained, revenues have been derived from the rental of its property, such property has been sold most advantageously, creditors have proved their claims, and innocent purchaser's rights have attached.   Under such circumstances, I think, the laches of the petitioner are too clear and apparent to allow me to entertain at this late day in the proceedings its prayer to go back and permit an issue of fact to be raised upon the question of jurisdiction.   This bank, however, will have the clear right to prove its debt and share ratably with other creditors in the distribution of the corporation's assets.

Let the prayer of this petition, therefore, by decree entered, be denied, the sale reported by Special Commissioner John W. Davis be confirmed, and the cause proceed to a final decree disbursing the assets and settling the affairs of this Traders' Company.