### CERRI v. AKRON–PEOPLE'S TELEPHONE CO. et al.

(District Court, N. D. Ohio, E. D.   November 30, 1914.)

No. 8805.

1. COURTS ⬄316—JURISDICTION OF FEDERAL COURTS—COLLUSIVE PARTIES.

Judicial Code (Act March 3, 1911, c. 231) § 37, 36 Stat. 1098 (Comp. St. 1913, § 1019), which provides that if it shall appear that any suit commenced in a District Court does not really and substantially involve a dispute or controversy properly within its jurisdiction, or that the parties have been improperly or collusively made or joined for the purpose of creating a case cognizable in that court, such case shall be dismissed, applies to all cases, whether of contract or tort, and it is the duty of the court to act in such case on its own motion to prevent imposition or fraud on its jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 862; Dec. Dig. ⬄316.]

2. COURTS ⬄316—JURISDICTION OF FEDERAL COURTS—COLLUSIVE PARTIES.

A decedent left no estate, except a cause of action for his wrongful death, which under the state statute inured to the benefit of his widow and children. Both he and his widow were natives of the United States and citizens of Ohio. At the request of the widow's attorneys, plaintiff, who was an alien and a consular representative of the kingdom of Italy, was appointed administrator, and brought an action against citizens of Ohio for his decedent's death in a federal court. He had no acquaintance

with decedent, or his family, and no interest in the estate, and the sole reason for his appointment was so that he might sue in that court. *Held*, that the suit was collusive, and under Judicial Code, § 37, should be dismissed.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 862; Dec. Dig. ☞316.]

At Law. Action by Nicola Cerri, administrator of the estate of William McCracken, deceased, against the Akron-People's Telephone Company and the Village of Cuyahoga Falls. Hearing on question of jurisdiction. Action dismissed.

H. F. Payer and R. A. Baskin, both of Cleveland, Ohio, for plaintiff.

Hoyt, Dustin, Kelley, McKeehan & Andrews, of Cleveland, Ohio, and Stuart & Stuart, of Akron, Ohio, for defendant Akron-People's Telephone Company.

D. F. Felmly and J. C. Frank, both of Akron, Ohio, for defendant Village of Cuyahoga Falls.

CLARKE, District Judge. This is an action for wrongful death. After the case was stated to the jury, but before any evidence was introduced, the court noted that by the answer of the village of Cuyahoga Falls the jurisdiction of the court was challenged by allegations on the part of that defendant that William McCracken, the plaintiff's decedent, was at the time of his death a citizen and resident of the state of Ohio, that his widow and heirs at law were all of them, at the time of the commencement of the action, citizens of the state of Ohio and all resided in the village of Cuyahoga Falls, Summit county, Ohio; that the plaintiff is an alien and a citizen of the kingdom of Italy; that the widow of William McCracken declined the administration of his estate and requested the appointment of the plaintiff, an alien; that said plaintiff sought such appointment as adminstrator "for the colorable, collusive, and fraudulent purpose" of seeking thereby to confer jurisdiction upon this court, and for no other purpose; and that said alien plaintiff has in fact no interest in the controversy, nor in said estate, save to collusively and fraudulently lend his name and aid to a colorable attempt to give jurisdiction in this action to this court.

The court, calling the attention of counsel to the question of jurisdiction thus raised at the threshold of the trial, asked for argument of it, and after discussion adjourned court for its consideration. On the further coming in of court the jury was excused, and the court announced that, following the practice indicated in Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521, 29 L. Ed. 725, Wetmore v. Rymer, 169 U. S. 115, 18 Sup. Ct. 293, 42 L. Ed. 682, and Toledo Traction Co. v. Cameron, 137 Fed. 48, 69 C. C. A. 28, and under authority of section 37 of the Judicial Code, an issue would be formulated by the court, that evidence would be taken, and the question thus raised as to the jurisdiction of the court decided before further progress

of the trial. Thereupon the court stated to counsel that it would proceed to enter upon the hearing of the question following, viz.:

"Does this suit really and substantially involve a controversy properly within the jurisdiction of this court, or has the plaintiff, Nicola Cerri, as administrator of the estate of William McCracken, been improperly or collusively made plaintiff herein for the purpose of creating a case within its jurisdiction?"

By leave of court the Akron-People's Telephone Company amended its answer, so as to include substantially the allegations which have been quoted from the answer of the village of Cuyahoga Falls, and in addition alleged that for several years past the plaintiff, Nicola Cerri, has not devoted himself to the practice of his profession of physician, nor to any regularly recognized business or profession, other than that directly connected with his duties as consular agent of the kingdom of Italy; that he was never at any time a resident of the state of Ohio within the contemplation of the provisions of the Ohio statutes requiring that an administrator of the estate of any deceased citizen must be a resident of that state; that the appointment of Cerri was made through the solicitation of the widow and next of kin of said William McCracken, and their counsel, for the collusive and fraudulent purpose of invoking the jurisdiction of this court for the maintenance of this action, and for the purpose of preventing a trial of the cause of action herein sought to be enforced in Summit county, Ohio, in which each of the defendants was domiciled at all of the times involved in this litigation.

It is claimed in said amended answer as the effect of these allegations that the jurisdiction of this court has been fraudulently and collusively invoked, and that it is against public policy to allow the enforcement of such a cause of action by the consular representative of a foreign country. Section 37 of the Judicial Code reads as follows:

"If in any suit commenced in a District Court, or removed from a state court to a District Court of the United States, it shall appear to the satisfaction of the said District Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said District Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this chapter, the said District Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just."

The case of Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521, 29 L. Ed. 725, was decided in 1886 and construes section 5 of the act of March 3, 1875 (18 Stat. 472, c. 137). This section was repealed by the Judicial Code in 1911, but was re-enacted word for word, substituting only the word "District" for "Circuit," thus giving jurisdiction to the District Court, instead of to the Circuit Court.

In Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289, 32 L. Ed. 690, it is said, when the record discloses a controversy of which the court cannot properly take cognizance, its duty is to proceed no further and to dismiss the suit, and its failure or refusal to do what under

the law applicable to the facts proved it ought to do is an error which this court upon its own motion, will correct, when the case is brought here for review. The rule is inflexible and without exception (as was said upon full consideration in Mansfield, Coldwater, etc., R. R. v. Swan, 111 U. S. 379, 4 Sup. Ct. 510, 28 L. Ed. 462)—

"which requires this court, of his own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act."

In Hartog v. Memory, 116 U. S. 588, 6 Sup. Ct. 521, 29 L. Ed. 725, referred to above, the court says:

"Beyond this, no doubt, if from any source the court is led to suspect that its jurisdiction has been imposed upon by the collusion of the parties or in any other way, it may at once of its own motion cause the necessary inquiry to be made, either by having the proper issue joined and tried, or by some other appropriate form of proceeding, and act as justice may require for its own protection against fraud or imposition."

Without reference to the facts of each particular case, the principles upon and the spirit in which the statute precisely similar in terms to section 37 of the Judicial Code should be applied in practice by the courts are clearly and emphatically expressed by the Supreme Court as follows, viz.:

Williams v. Nottawa, 104 U. S. 209, 211 (26 L. Ed. 719):

"It cannot for a moment be doubted that this was done 'for the purpose of creating a case' for Kline and Connor cognizable in the courts of the United States. That being so, it was the duty of the Circuit Court to dismiss the suit as to these bonds, and proceed no further; for as to them the controversy was clearly between citizens of the same state, Kline and Connor being the real plaintiffs. The transfer to Williams was colorable only, and never intended to change the ownership. This both Williams and Kline and Connor knew. * * * But, whatever may have been the practice in this particular under the act of 1789, there can be no doubt what it should be under that of 1875. In extending a long way the jurisdiction of the courts of the United States, Congress was specially careful to guard against the consequences of collusive transfers to make parties, and imposed the duty on the court, on its own motion, without waiting for the parties, to stop all further proceedings and dismiss the suit the moment anything of the kind appeared. This was for the protection of the court as well as parties against frauds upon its jurisdiction, for as was very properly said by Mr. Justice Miller, speaking for the court, in Barney v. Baltimore, 6 Wall. 280 [18 L. Ed. 825] such transfers for such purposes are frauds upon the court, and nothing more. * * * In this connection we deem it proper to say that this provision of the act of 1875 is a salutary one, and that it is the duty of the Circuit Courts to exercise their power under it in proper cases."

Detroit v. Dean, 106 U. S. 541, 1 Sup. Ct. 563, 27 L. Ed. 300:

This "was an attempt to get into the federal court upon a pretense that justice was impossible in the state courts, owing to the excited condition of the public mind. * * * The refusal to take legal proceedings in the local courts was a mere contrivance, a pretense, the result of a collusive arrangement to create for one of the directors a fictitious ground for federal jurisdiction. The case comes, therefore, within the purview, if not the letter, of the provisions of section 5 of Act March 3, 1875, c. 137, defining the jurisdiction of the Circuit Courts of the United States."

Farmington v. Pillsbury, 114 U. S. 138, 144, 5 Sup. Ct. 807, 810 (29 L. Ed. 114):

"The old rule established by the decisions, which required all objections to the citizenship of the parties, unless shown on the face of the record to be taken by plea in abatement before pleading to the merits, was changed (by the act of 1875), and the courts were given full authority to protect themselves against the *false pretenses* of apparent parties. This is a salutary provision, which ought not to be neglected. It was intended to promote the ends of justice, and is equivalent to an express enactment of Congress that the Circuit Courts shall not have jurisdiction of suits which do not really and substantially involve a dispute or controversy of which they have cognizance, nor of suits in which the parties have been improperly or collusively made or joined for the purpose of creating a case cognizable under the act."

Little v. Giles, 118 U. S. 596, 602, 7 Sup. Ct. 32, 36 (30 L. Ed. 269):

"We are satisfied that by the act of 1875 Congress intended to introduce a rule that shall put a stop to *all collusive shifts and contrivances* for giving such jurisdiction. The language of the fifth section of that act is as follows: [After quoting the language the court continues:] Here the words 'really' and 'substantially,' and the expression 'improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable,' are very suggestive, and show that, by giving the Circuit Courts authority to dismiss or remand the cause at once, if these things are made to appear, it was the intent of Congress to prevent and *put an end to all collusive arrangements made to give jurisdiction,* where the parties really interested are citizens of the same state. Of course, where the interest of the nominal party is real, the fact that others are interested who are not necessary parties, and are not made parties, will not affect the jurisdiction of the Circuit Court; *but when it is simulated and collusive, and created for the very purpose of giving jurisdiction,* the courts should not hesitate to apply the wholesome provisions of the law."

Lehigh Mining & Mfg. Co. v. Kelly, 160 U. S. 327, 16 Sup. Ct. 307, 40 L. Ed. 444:

In this case the stockholders of a Virginia corporation, which owned land, organized themselves into a corporation under the laws of Pennsylvania, and the Virginia corporation then conveyed the lands to the Pennsylvania corporation, and the latter company brought action against citizens of Virginia to recover possession of the lands. After an elaborate discussion of the cases which we have cited and of others putting an interpretation upon the act of 1875, the court concludes as follows (160 U. S. 342, 16 Sup. Ct. 313, 40 L. Ed. 444):

"The case before us is one that Congress intended to exclude from the cognizance of a court of the United States. The Pennsylvania corporation neither paid nor assumed to pay anything for the property in dispute, and was invested with the technical legal title for the purpose only of bringing a suit in the federal court. * * * If this action were not declared collusive, within the meaning of the act of 1875, then the provision making it the duty of the Circuit Court to dismiss a suit, ascertained at any time to be one in which parties have been improperly or collusively made or joined, for the purpose of creating a case cognizable by that court, *would become of no practical value, and the dockets of the Circuit Courts of the United States will be crowded with suits of which neither the framers of the Constitution nor Congress ever intended they should take cognizance.*"

Lake County Commissioners v. Dudley, 173 U. S. 243, 254, 19 Sup. Ct. 398, 402 (43 L. Ed. 684):

"But he [Dudley, the defendant] did not buy the coupons at all. He is not the owner of any of them. He is put forward as owner for the purpose of making a case cognizable by the federal court as to all the causes of action embraced in it. * * * *The transfer was collusive and simulated for the purpose of committing a fraud upon the jurisdiction of the Circuit Court in respect at least of part of the causes of action that make the case before the court.* For the reasons stated the trial court, when the evidence was concluded, should on its own motion have dismissed the suit."

Proceeding to the trial of the question which we have stated, and upon the authority of the decisions quoted, the court heard the testimony of the plaintiff, Nicola Cerri, and of Mrs. Pearl McCracken, widow of William McCracken, deceased.

The testimony of Cerri disclosed that he had been consular agent for the Italian government, resident at Cleveland, Ohio, since 1900; that since 1907 or 1908 he had devoted his entire time to his consular duties; that he did not know William McCracken in his lifetime, and had not met his widow until the day of the hearing; that he did not know whether either McCracken or his wife were of Italian origin or not; that he secured his appointment as administrator at the request of counsel engaged in the trial of the case, for the purpose of accommodating them, without any definite purpose of commencing suit in the United States court, as he said, but with knowledge that it would be possible for him to commence suit in the United States court, making his alienage the basis of its jurisdiction. He said that he did not know who was on his bond, that being arranged by the lawyers, and that *his only interest in the case was the statutory fee which he expected to receive.*

Mrs. McCracken testified that her husband was born in Massachusetts, and that she was born in Ohio; that they had lived in the village of Cuyahoga Falls, Summit county, Ohio, for about nine years before his death, and that neither of them was of Italian origin; that she did not know Mr. Cerri at the time he was appointed administrator; that he was selected, so that the suit on trial might be brought in the federal court; and that her husband left no estate, except the claim sued on in this case. She was asked: "Was there any other purpose?" and she replied, "I don't know as there was."

Upon this state of facts can it be said, having regard to realities rather than to mere form, that this suit involves a controversy "really and substantially" within the jurisdiction of this court?

Since the Judiciary Act of 1789 it has been the policy of the federal law, slightly varied by the act of March 3, 1875, not to extend to Circuit or District Courts jurisdiction over any suit to recover "the contents of any promissory note or other chose in action" in favor of an assignee, unless a suit thereon might have been prosecuted in such court if no assignment had been made. A very broad scope has been given by the courts to the expression "other choses in action." Mexican National R. R. v. Davidson, 157 U. S. 201, 15 Sup. Ct. 563, 39 L. Ed. 672.

[1] While section 37 of the Judicial Code does not mention in specific terms claims sounding in tort, its obvious purpose and policy is not to permit the jurisdiction of the federal courts in any case to be the

subject of collusive arrangement between persons who for any reason may prefer a trial of the case in the federal rather than in the state courts, which are open to all litigants.

[2] In this case the deceased left no estate to be administered except a right of action for wrongful death, and this right of action is given by Ohio law "for the exclusive benefit of the wife and children of the deceased." While such right of action must be prosecuted in the name of a personal representative of the deceased, yet the amount recovered shall be apportioned among the beneficiaries, unless adjusted between themselves by the court making the appointment, in such manner as shall be fair and equitable. General Code Ohio, § 10772. And the order in which interested persons are entitled to administer an estate is minutely prescribed. G. C. Ohio, § 10617.

Thus the beneficial interest in the claim for wrongful death involved in this case is vested wholly in the widow and children of the deceased, and the evidence shows that they all resided at the time of McCracken's death, and since that time, in the village of Cuyahoga Falls, Summit county, Ohio. One of the defendants is that village, and the other is a local telephone company, with its principal office in the village.

All of the beneficiaries of the estate of the deceased and both of the defendants being thus residents of Summit county, Ohio, no reason existed for an appeal to that jurisdiction of the federal courts which is based on diversity of citizenship, and which was created for the express purpose of protecting the alien or nonresident from the injustice which might result from local prejudice against him on the part of courts or jurors. Gordon v. Longest, 16 Pet. 103, 10 L. Ed. 900; Whelan v. New York, L. E. & W. R. Co. (C. C.) 35 Fed. 858, 1 L. R. A. 65. If McCracken had survived his injuries, he could not have sued the defendants in this court to recover for any injuries received in this same accident in which he was killed.

In this state of facts and of the law, this alien consular agent, residing in Cleveland, Cuyahoga county, Ohio, at the request of lawyers resident in the same city, appears as a party to the controversy, and his appointment as administrator is procured to be made by them. They arrange the giving of his bond, and assure him that the appointment shall not cause him any trouble or responsibility; and he, knowing that he may be paid the statutory fees upon the amount of money which may be recovered by settlement or trial of this action, accepts the so-called, but wholly nominal, trust.

Thus, while an administrator is a necessary party to the prosecution of this claim, this administrator was plainly a party only in name and form—not in any real or substantial sense. He had no interest in the beneficiaries; he was not even acquainted with any of them; he confesses that he was acting against his inclination in order to accommodate the lawyers engaged in the case; and the widow says that he was selected for the sole purpose of making it possible to sue the defendants in the case in this federal court rather than in the local courts, provided by the state of Ohio for all the real parties to this suit, and in which they would all have stood upon a perfect equality

It would be difficult to find a more perfect illustration of a mere "naked trust" than that which Cerri was undertaking to administer— a trust which required no action on the part of the trustee beyond turning over money to the cestui que trust. Black's Law Dict. title "Trust," p. 1176.

Under the circumstances thus detailed, it seems to be too clear for discussion that there was no real and substantial controversy between Cerri and the defendants in this case, and that it is the duty of the court to defeat this attempt on the part of the plaintiff to use his position as an alien to trifle with and defeat the jurisdiction of our state courts, to impose upon the federal court the trial of cases which it is not created to try, to delay the trial of cases properly pending here, and to call from their own courts into this distant court the defendants, who, as certainly as the beneficiaries of this estate, have rights which should be considered and protected by this court from unjust imposition.

Looking through forms to the substance of this transaction, it seems to this court as palpably a collusive attempt to in form vest in this alien plaintiff the right of action, which is really and substantially vested in the widow and her children, "for the purpose of creating a case" cognizable in this court, as was the transfer of the land in Lehigh Mining & Mfg. Co. v. Kelly, 160 U. S. 327, 16 Sup. Ct. 307, 40 L. Ed. 444, or as was the refusal on the part of the two resident directors to take legal proceedings in the local courts in Detroit v. Dean, 106 U. S. 541, 1 Sup. Ct. 560, 27 L. Ed. 300, and that it is therefore the clear duty of the court "to proceed no further herein," and to dismiss this suit, as required by section 37 of the Judicial Code.

If there should be any doubt as to the validity of the conclusion arrived at in the foregoing discussion, certainly there can be no doubt that the evidence introduced on the trial of the issue formulated by the court brings this case within the alternative provision of section 37 of the Judicial Code, viz., that the plaintiff, Cerri, was improperly or collusively made a plaintiff herein for the purpose of creating a case cognizable in this court. The widow testifies that her only purpose in selecting this alien Italian consular agent as administrator of her husband's estate was that his alienage might be used as the basis of invoking the jurisdiction of this court, and he himself testifies that he had no interest in the estate or in the beneficiaries beyond the lending of his name and privilege as an alien to create a case which might be prosecuted in this court. Discussion cannot make clearer than this statement of the facts makes it that the appointment of the plaintiff was arranged and procured for the purpose of imposing upon the jurisdiction of this court, and that under section 37 of the Judicial Code it is the imperative duty of the court to proceed no further herein, but to dismiss the case.

In consideration of this case, I have not overlooked or been unmindful of the effect which a due subordination of authority on the part of this court should give to the two cases of Cincinnati, H. & D. R. R. Co. v. Thiebaud, 114 Fed. 918, 52 C. C. A. 538, and Toledo Traction Co. v. Cameron, 137 Fed. 48, 69 C. C. A. 28, both decided by

the Circuit Court of Appeals of this circuit. An examination of these decisions, however, and of the earlier decisions on the authority of which they proceed, shows that in each of them the question considered and decided by the court was, assuming a regular appointment of an administrator, or of a guardian, is the citizenship of the representative or that of the beneficiaries to be looked to in determining the diversity of citizenship necessary to the jurisdiction of United States courts based on that ground?

Not in one of these cases was the claim made or considered by the court that before the appointment of the representative counsel had deliberately selected and procured an alien to be appointed for the express purpose of defeating the jurisdiction of state courts, and of invoking the jurisdiction of the federal court. Not in one of them was the act of 1875 referred to, thus showing that the claim that the case was collusively created in form to be cognizable in a federal court was not made or considered in any of them. In the Thiebaud Case the administrator was appointed in the appropriate county in Indiana where the fatal accident involved in the case occurred, and in the Cameron Case the guardian was appointed in Michigan, where the ward resided, and neither opinion discusses any such question as we have in this case. For these reasons it seems clear enough that such decisions do not make against the conclusion we are reaching in this case.

The only decision to which my attention has been attracted in which approximately the question we are considering here was presented is Goff's Adm'r v. Norfolk & W. R. Co. (C. C.) 36 Fed. 299, decided in 1888 by Circuit Judge Paul. In that case the statute of 1875 was not considered by the court, and the decision is so obviously one of first impression that I cannot accept it as authoritative, having regard to the principles announced by the Supreme Court in Lake County Commissioners v. Dudley, 173 U. S. 243, 19 Sup. Ct. 398, 43 L. Ed. 684, Lehigh Mining & Mfg. Co. v. Kelly, 160 U. S. 327, 16 Sup. Ct. 307, 40 L. Ed. 444, Southern Realty Investment Co. v. Walker, 211 U. S. 603, 29 Sup. Ct. 211, 53 L. Ed. 346, and Miller & Lux v. East Side Canal & Irrigation Co., 211 U. S. 293, 29 Sup. Ct. 111, 53 L. Ed. 189, all of which were decided long subsequent to the decision of the Goff Case.

I cannot forbear saying, however, in this connection, that there is a wide-spread conviction among members of the bar, in which this court shares, that these cases referred to deserve a re-examination on principle, because of the extent to which they are being taken advantage of for the purpose of thwarting the jurisdiction of state courts, and because of the opportunity which they furnish for burdening the dockets of federal courts with cases, of which the case under consideration is an extreme example, in which the real and substantial dispute involved is between citizens of one state.

This case, it may be added, presents further, also, a question of public policy. The plaintiff is a consular agent for the kingdom of Italy, resident in Cleveland, and as such he enjoys very definite and important privileges and immunities while residing in the United States.

Const. U. S. art. 3, § 2, and section 256 of the Judicial Code provide that suits against consuls and vice consuls shall be prosecuted only in federal courts; and as to his other privileges, see Enc. Law & Procedure, vol. 2, p. 269.

If a becoming sense of propriety does not serve to prevent such an agent of a foreign government from using his alienage for the purpose of meddling in controversies between citizens of this country in which he has no legitimate interest, and from injecting himself into differences between citizens of the government to which he is accredited for the purpose of determining the courts in which such controversies shall be tried, it would seem, wholly independent of the provisions of the Judicial Code, that the courts, upon principles of that public policy which forbids conduct of a tendency so mischievous as to be injurious to the interests of the state, even apart from their legality, should interpose to prevent such conduct from either defeating the jurisdiction of state courts or from burdening federal courts with cases the trial of which must delay the trial of other cases properly pending therein.

It results from the authorities cited, and the discussion in this opinion, that this court is without jurisdiction to try this case, because it does not involve a real and substantial dispute between the alien plaintiff and the defendants, and also because the appointment of Cerri, the plaintiff, an alien, was improperly and collusively obtained, for the purpose of creating a case cognizable in this court, and that therefore the case must be dismissed, at the costs of the plaintiff.