CASE 63—ACTION BY ELLIOTT, &C. AGAINST BURKE, &C. FOR AN INJUNCTION, CONSOLIDATED WITH ACTION OF BURKE, &C. AGAINST ELLIOTT, &C. FOR AN INJUNCTION.—MAY 27.

# Elliott, &c. v. Burke, &c.

| | |
|---|---|
| 113 | 479 |
| 132 | 62 |
| 113 | 479 |
| 137 | 194 |

APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR BURKE, &C. AND ELLIOTT, &C. APPEAL. REVERSED.

DE FACTO OFFICERS—VALIDITY OF ELECTION—ESTOPPEL TO QUESTION —ELECTION OF SCHOOL TRUSTEES—SECRET BALLOT—VARIANCE FROM STATUTORY METHOD—POWER TO FILL VACANCIES.

Held:  1. De facto officers in possession of an office and discharging the duties were, as against persons having no right thereto, entitled to continue in office.

2. A person, by consenting to or participating in a void election, does not deprive himself of the right to dispute its validity.

3. As members of the board of education of a city of the fourth class perform the duties of school trustees, they should, in the absence of any provision in the charter to the contrary, be elected in the same way, and therefore the vote must be taken *vive voce*.

4. Where the statute requires a vote to be taken *vive voce*, an election by secret ballot is absolutely void.

5. Where no valid election of members of the board of education of a city of the fourth class has been held at the time required by law, the members of the board in office at the time fixed for the election either continue in office until their successors are elected and qualified, or they have power to fill

Elliott, &c. v. Burke, &c.

the vacancies existing by reason of the failure to elect, and in either event persons appointed by the city council to fill the vacancies are not entitled to the offices.

B. F. GRAZIANI, FOR APPELLANTS.

The appellants constitute the *de facto* board of education of the city of Ludlow, a city of the fourth class, and did constitute said board all through the year, 1891, and as trustees, maintained a public school in said city, employing teachers, and was at the time of the bringing of this action. The appellees were candidates for trustees of said board, two from each of the four wards, and claimed to be elected, but were elected by ballot instead of *vive voce*, and undertook by this action to oust the *de facto* board, claiming in their petition that they were elected at the November election, 1901, by ballot, and that thereafter the city council elected them.

The admitted facts are that the appellees were candidates, were elected by ballot, but finding that that election was void, or irregular, had the city council to elect them. The trial court upon hearing the case decided, basing its opinion upon the case of Cynthiana v. Board of Education, 21 R., 731, that the election was irregular, but not void, and declared in favor of the appellees. From that the appellants prayed an appeal, and the legal propositions now presented to this court is, *First*, was the election of appellees by ballot irregular or was it void? We say it was void. *Second*, if only irregular the fact that appellees failed to qualify, then by section 3588, Kentucky Statutes, they were not entitled to the office because they failed to qualify. *Third*, Did the city council have any right to elect the members of the board of education? We say no.

## AUTHORITIES CITED.

City of Cynthiana v. Board of Ed., 21 R., 731; Moss v. Riley, 43 S. W., R., 421; Kentucky Statutes, secs. 3588, 3485, 3606, and 3589; Chambers v. Adair, 23 R., 373; A. & E. Ency. of Law, vol. 5, pp. 96 and 106, vol. 19, same page, 394.

FURBER & JACKSON, FOR APPELLEES.

1. The question involved in this appeal, is, whether or not the board of education was legally elected at the November election, 1901. The election as held was by secret ballot and admittedly a full, fair and complete expression of the will of the people.

The questions raised are these:

Elliott, &c. v. Burke, &c.

(1) Was the election of the members of the school board held in November, 1901, by secret ballot void as contended by appellants?

(2) If void, had the city council the right to fill the vacancies caused by said void election?

(3) Did the action of McNeal, Moss and Jewett participating in the election estop the appellants from contending, in equity, that the election was void?

We say the election was not void:

(a) Because no voter was deprived of his vote.

(b) Because no attempt was made to disqualify any person from voting.

(c) Because the manner of voting did not affect the result, but the will of the people was clearly expressed without let or hindrance.

2. We contend that even if the election was absolutely void, the city council had the right to fill the vacancies, and that it has done so, carrying out the will of the people by electing exactly the same men who were elected by the people at the November election.

3. The proof shows that appellant, T. J. McNeal was the cause of the election being held in the manner it was held, and that the appellants, Moss and Jewett, in their petitions, requested the county clerk to put their names upon the ballot for secret election, and by these acts we contend they are estopped from coming into a court of equity and asking relief from their own acts.

### AUTHORITIES CITED.

1. was the election by secret ballot void? Moss v. Riley, 19 R., 993; Kentucky Statutes, secs. 3588 and 1446; Kentucky Constitution, secs. 144, 154, 155; Cynthiana v. Board of Ed., 21 R., 731; McCrary on Elections, (4th ed.) secs. 228, 167, 172; Andrews v. Saucier, 13 La. Ann. Rep., 301, &c.; 10 Am. & Eng. Ency. of Law (2d ed.), p. 708, 567, 690; People v. Porley, 80 N. Y., 624; Russel v. McDowell, 83 Cal., 77.

2. Had the council the right to fill the vacancy? Kentucky Statutes, secs. 3606, 3552.

3. Are the appellants estopped?      Andrews v. Saucier, 13 La. Annual Rep., 302; 10 Am. & Eng. Ency. of Law (2 ed.), 714.

OPINION OF THE COURT BY CHIEF JUSTICE GUFFY—REVERSING.

The appellants were the acting trustees or members of the

board of education of the city of Ludlow, a city of the fourth
class. It appears that the appellees were elected by secret
ballot at the November election, 1901, as trustees or mem-
bers of the board of education of the said city. The appel-
lants instituted suit in the Kenton circuit court to enjoin the
appellees from interfering with them in the discharge of
their duties as trustees aforesaid. The appellees also in-
stituted an action against the appellants in the same court,
claiming that they were the actual, duly elected and quali-
fied trustees or members of the board, and seeking a manda-
tory injunction and other relief against these appellants. By
agreement the cases were consolidated and heard together,
and upon final hearing the circuit court adjudged that the
appellees were entitled to the offices in question, and from
that judgment this appeal is prosecuted.

Various arguments are urged in support of the conten-
tion of the parties. It clearly appears that appellees were
elected as members of said board by secret ballot, their
names being, as we understand the record, placed on the
regular ballots voted at the regular election for other offices.
It is also in evidence that a very full vote was cast for trus-
tees, and that the names of these appellants, or some of them,
were also upon the ballots, and voted for at the same time;
and the appellees received a majority of the votes cast, and
the election commissioners gave them the certificate of elec-
tion. It also appears that the city council, some time after
the election, assumed to elect appellees to the said offices.
It is argued for appellees that the appellants, having been
voted for by secret ballot, and knowing that the election
was being so held, and making no objection thereto at the
time, are now estopped from questioning the validity thereof.
It is also argued that the appellants were elected sometime
before in the same manner, and accepted and entered upon

the discharge of their duties thereunder, and for that rea-
son can not now be heard to assert a right to continue in
office. We do not think either of these contentions is ten-
able. It is certain that the appellants were *de facto* officers
in possession of the office and discharging the duties thereof,
and were, as against persons having no legal right thereto,
entitled to continue in office. Nor do we think that a party,
by consenting or participating in a void election, deprives
himself of his right to dispute the validity. A few men, or
even the entire public, can not make valid an election held
in direct violation of a mandatory statute. It seems to
us that there are two vital questions involved. The first
is whether or not members of the board of education in
question can be elected by secret ballot. It seems to us that
this question has been clearly decided in Moss v. Riley, 102
Ky. 1, 19 R., 993, 43 S. W., 421. The Constitution and
statutes in relation to this question were fully considered by
the court, and it was clearly held that trustees or members
of the board of education in cities of the fourth class must
be elected by *viva voce* voting. We quote as follows from
the syllabus of the case supra: "Under the provisions of
the charter for cities of the fourth class (section 3606, Ken-
tucky Statutes), such cities each constitute one common
school district, and as the charter for such cities does not
provide the manner in which the members of its board of
education shall be elected, and the common-school law (sec-
tion 4434, Kentucky Statutes), provides that the vote in
electing school trustees shall be taken *viva voce*, and as the
members of the board of education perform the duties of
trustees, they should be elected in the same way. The whole
question as to the manner of electing school trustees was
left by the Constitution to the General Assembly. The
provision in the charter for cities of the fourth class that

the members of the board of education shall be elected 'by the qualified voters of the city,' means those of the city who are qualified to vote under the general school law, which confers the right of suffrage on widows, etc., in such elections." It is said by appellees that this decision is not conclusive of the question, because in the case supra there was a controversy between persons claiming to be elected by *viva voce* vote and those claiming to be elected by ballot. But, in our opinion, that fact does not at all affect the decision as to the validity of an election by ballot. Nor is the opinion in City of Cynthiana v. Board of Education, 21 R.. 731 (52 S. W., 969), in conflict with the case supra. In the case last cited the trustees or board of education had been elected by ballot, and were engaged in the discharge of their duties, and the appellant in that case had refused to pay over certain moneys to the board of education, and the court held that the question of the election of the board could not be successfully attacked in such a proceeding; or, in other words, upon the record as presented it was the duty of the appellant to pay over to the appellee the money in question. In some respects the decision would seem to support the contention of the appellant in the case at bar. It is true that some statutes regarding the management, conducting, or ascertaining the result of an election has been held to be mandatory, but, if the statute requires an election to be *viva voce*, such statute must, of necessity, be mandatory, and the holding of the same by secret ballot is in no sense a compliance with the statute. If the contention of appellees should prevail, and become the settled law of the State, it would follow that the parties at any election precinct might determine to hold an election *viva voce,* or else hold it by ballot, and each man prepare his own ballot; and, if there was a full vote, and no objection, and

no fraud perpetrated, the returns must be accepted and counted the same as if the election had been held according to law. It would also follow that in Louisville, for instance, at some precincts the election for school trustees might be conducted by ballot, and at other precincts the vote might be counted *vira voce*; and the same may be said as to the different school districts throughout the State. Some might hold their elections by ballot and some *viva voce*. Manifestly, no such construction of the election law can be tolerated. In our opinion, the election of school trustees or members of the board of education held by secret ballot is absolutely void. It therefore follows that the appellees acquired no right by virtue of the election held in November, 1901.

The next question for decision is as to the effect of the action of the common council of Ludlow. As before stated, it is the contention of appellees that, if there was a failure to elect in November, the city council had the power to fill the vacancy; and we are referred to section 3606, Kentucky Statutes, in support of this contention. It will be seen from section 3588 that there may be maintained in cities of the fourth class a system of public schools at which all the children residing in the city between the ages of 6 and 20 may be taught at the public expense. It is further provided that the school shall be under the control of a board to be styled the "board of education," consisting of two trustees from each ward in the city, to be elected at the general November election, 1893, by the qualified voters of the city at large. Many other provisions are contained in the section, not necessary to mention. Section 3589 reads as follows: "Said board of education shall determine the qualification of its members. It shall have the power to fill, until the next general election, all vacancies in said board

occasioned by death, removal or other cause." It is provided in section 3606 that any city of the fourth class in which said system of public schools shall be established and maintained shall constitute one common school district. The latter clause of said section reads as follows: "Whenever the board of council of any city of this class shall determine by ordinance to establish and maintain a system of public schools therein under the provisions of the act mentioned in the title of this act, or in case there was a failure at the last election provided for in said act to elect a board of education in any city of the fourth class, the board of council shall have the power and authority to appoint trustees for such school, to serve until the election and qualification of trustees as provided in section three thousand five hundred and eighty-eight of said act, as amended herein." Taking the entire act together, it seems clear that the provision, supra, was only intended to apply to a vacancy accruing by reason of a failure to elect trustees at the November election of 1893, and that it has no application whatever to the controversy in this case. Section 1520, Kentucky Statutes, defines the term "vacancy in office," and among the definitions given is, "Or when there has been no election to fill the office at the time appointed by law." If the board of education in office prior to November, 1901, was not authorized to continue in office until the election and qualification of a successor,—which is not now decided,—it follows that they would, in a case of vacancy, be authorized to fill the same, and, there being no legal election in 1901, the vacancy would exist. In either event, the claim of appellees must fail.

For the reasons indicated, the judgment appealed from is reversed, and cause remanded, with directions to perpetually enjoin and restrain the appellees from in any manner in-

terfering with appellants in the discharge of the duties of the board of education, and also enjoin the appellees from in any manner attempting to exercise the powers, duties, or privileges pertaining to the board of education of the city of Ludlow, and for proceedings consistent with this opinion.

Judges DuRelle, White, and Hobson, dissenting.

Judge Hobson's dissenting opinion:

The rule is that constitutional provisions relating to the manner of holding an election are mandatory; but as to statutes this rule is not followed, unless a fair consideration of the statute shows that the Legislature intended compliance with its provisions to be essential to the validity of the proceedings. Where this does not appear, the statute is treated as directory merely. The rule has been thus well stated: "Questions affecting the purity of elections are in this country of vital importance. Upon them hangs the experiment of self-government. The problem is to secure—First, to the voter a free, untrammeled vote; and, secondly a correct record and return of the vote. It is mainly with reference to these two results that the rules for conducting elections are prescribed by the legislative power. But these rules are only means. The end is the freedom and purity of the election. To hold these rules all mandatory and essential to a valid election is to subordinate substance to form, the end to the means. Yet, on the other hand, to permit a total neglect of all the requirements of the statute, and still sustain the proceedings, is to forego the lessons of experience, and invite a disregard of all those provisions which the wisdom of years have found conducive to the purity of the ballot box. Ignorance, inadvertence, mistake, or even intentional wrong on the part of local officials should not be permitted to disfranchise a district.

Yet rules and uniformity of procedure are as essential to procure truth and exactness in elections as in any thing else. Irregularities invite and conceal fraud." Gilleland v. Schuyler, 9 Kan., 569. In McCrary on Elections, after quoting the above, the learned author says: "If we keep in view these general principles, and bear in mind that irregularities are generally to be disregarded, unless the statute expressly declares that they shall be fatal to the election, or unless they are such in themselves as to change or render doubtful the result, we shall find no great difficulty in determining each case as it arises under the various statutes of the several States." "Those provisions of a statute which affect the time and place of the election and the legal qualifications of the electors are generally of the substance of the election, while those touching the recording and return of the legal votes received and the mode and manner of conducting the mere details of the elections are directory. The principle is that irregularities which do not tend to affect results are not to defeat the will of the majority. The will of the majority is to be respected even when irregularly expressed. The officers of election may be liable to punishment for a violation of the directory provisions of a statute, yet the people are not to suffer on account of the default of their agents." Sections 192, 193, McCrary, Elect. By our Constitution, elections are to be by secret official ballot. Section 147. But school elections are excepted from this rule, and may be regulated by the General Assembly. Section 155. Pursuant to this authority, it has been enacted that the election for school trustees of common schools shall be taken *viva voce*. Kentucky Statutes, sec. 4434. This exception to the holding of elections by secret ballot is made because the school districts are small, the elections are non-political, and there is not the same reason for re-

quiring secrecy as to the choice of the voter to protect him from intimidation, and secure a fair and free expression of the popular will. Whether this rule applied to the election of school boards in the cities under the acts governing them was a matter on which grave difference of opinion existed. In Moss v. Riley, 102 Ky., 1 (19 R., 993),(43 S. W., 421), this court held that it did. But it must be admitted the Legislature did not so clearly express this that it can be said, from a fair construction of the act, that it intended a compliance with the provisions in relation to the manner of holding the election to be essential to the validity of the proceeding. The statute not only does not declare that nonconformity to its provisions shall be fatal to the election, but is so obscure on the subject as to how the election shall be held that there was certainly room for well-founded difference of judgment. Under the authorities a disregard of the provisions of a statute "touching the recording and return of the legal votes received and the mode and manner of conducting the mere details of the election" can not invalidate the proceeding where the statute does not so declare, and these matters are so obscurely expressed as to show that the Legislature did not have in mind making them essential to its validity.

The election in this case was fairly held. There was a full expression of the popular will. It was held as it was by consent, or without objection. The voter had no choice but to cast his vote in the manner directed by the officers. Whether he should call out his choice *viva voce* or hand the judges a written paper containing it were matters "touching the recording and return of the legal votes received." While the judges should not have received the vote in this way, yet they did thus conduct the election, "and the people are not to suffer on account of the default of their agents."

By our statute the ballots are preserved, and it was a mere matter of form whether the voter's choice was recorded by the officer or recorded by the voter and delivered to the officer and by him counted. The irregularity did not affect the result in any way, and there is nothing in the statute from which it may be inferred that the Legislature contemplated that such an irregularity should vitiate the proceeding. The whole thing comes to this: That the judges of the election received and counted votes that were cast irregularly. But there was no contest of the election. There was no objection to the votes being cast in this way, and no objection to their being counted. The persons elected, having received their certificates, are *prima facie* entitled to the offices, and their title can not be impeached on account of errors of the officers in the manner of holding the election. This was expressly held by this court in City of Cynthiana v. Board of Education, 21 R., 731 (52 S. W., 969). There is no inconsistency between that case and the case of Moss v. Riley. In the latter case two sets of trustees were elected; one by an election held *viva voce*, and the other by an election held by ballot. In a contest between them it was held that those elected in the manner provided by the statute had the better right. But where only one election has been held at the time and place and by the officers required by law, when the irregularity in no way affected the result, and the people have acquiesced in the result, and there has been no contest of the election, a very different question is presented. It does not follow from this that all the provisions of the statute might be disregarded, or, as has been suggested, the people might meet on the street corner, and by a show of hands declare their choice. The statute must be substantially followed, but it need not be exactly followed. This court has often approved the rule quoted from McCrary

on Elections disregarding irregularities touching the manner of holding an election or receiving the votes where they do not appear to have affected the result. It is in accord with the entire current of modern authorities. Voting by ballot is the rule in this State. The less formal method of voting *viva voce* in school elections is allowed by the statute for mere convenience. The taking of the votes in this more simple way was not of the essence of the election, and, it being. in all other respects regularly held, and the result regularly declared without objection, to hold it now void is to magnify form above substance. I therefore dissent from the opinion of the court.

Judges DuRelle and White concur in this dissent.

Petition for rehearing by appellee overruled.