INTERCONTINENTAL RUBBER CO. v. BOSTON & M. R. R.

(District Court, D. Massachusetts. February 26, 1917.)

No. 744.

1. RAILROADS ☞206—POWER OF DIRECTORS—PROCEEDINGS FOR RECEIVERSHIP.
    The board of directors of a railroad company, with the approval of a majority of the stockholders, has power to initiate proceedings looking to a receivership, by procuring the filing of a bill by a bona fide creditor, the allegations of which are admitted for the company, and there is no impropriety in such proceeding, where the directors act in good faith, solely for the interests of the company, and in view of its duty to the public as a common carrier.

2. RAILROADS ☞205—"INSOLVENCY"—RECEIVERS.
    By "insolvency" of a railroad company is meant inability to meet its obligations as they mature in the ordinary course of business, and at the same time to carry on its business in a proper way, and perform its public duties.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvency.]

In Equity. Suit by the Intercontinental Rubber Company against the Boston & Maine Railroad. On application for appointment of permanent receiver. Granted.

Boyd B. Jones, of Boston, Mass., for plaintiff.
George L. Mayberry, of Boston, Mass., for defendant.

MORTON, District Judge. At the conclusion of the hearing I orally stated my findings of fact substantially as follows:

"There are but two issues which have been heard here. They have been very clearly outlined. The first is whether the receivership was brought about by fraud on the part of the board of directors as at present constituted. That issue was not raised by the interests represented by Mr. French; their contention being, as I understand it, less as to the facts than as to the law. It was raised by the minority interests, represented by Mr. Crooker, who have been allowed to present all relevant evidence upon that question which they desired to offer.

"It seems to me that the long hearing which we have been through has served one useful purpose. It must have satisfied everybody who followed the case that there is not the slightest foundation for the charges of fraud made against the present board of directors. It must be clear to everybody who has followed the evidence that the present board of directors has acted with integrity and ability, for the best interests of the Boston & Maine Railroad as they saw them. There is no necessity for further comment on the evidence on this point. That disposes of the first of the questions raised by the interests represented by Mr. Crooker.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"It follows that the answer admitting the allegations of the bill was not, as these petitioners to intervene allege, a fraudulent answer, made in bad faith, and not adequately representing or speaking for the interests of the corporation itself, but that it was an answer filed in good faith for the defendant corporation by its officers honestly acting for it. As such, if the officers acted within their authority, a question which I shall take up later, it is the act of the respondent corporation, and constitutes a sufficient and binding admission of the allegations in the bill of complaint. Those being established, it would follow that a receiver ought to be appointed, if the allegations in the bill are sufficient. They plainly are. Indeed, no question that they are not sufficient, when taken in connection with the answer, has been raised. The receivership ought, therefore, to be continued, and a receiver ought to be appointed for all purposes prayed for in the bill, if the respondent's officers and directors had power and authority to do what they did. The parties represented by Mr. French deny that the officers and directors had such power and authority, and desire to submit briefs. So I will not decide that question of law at present.

"I decide now that there is no evidence warranting any finding of fraud, or bad faith, or any imputation of that sort, against the present board of directors, and that their acts, so far as they had the power and authority, are binding upon the Boston & Maine Railroad.

[2] "As to the other question which has been heard before me, viz. whether the respondent is insolvent, the finding which I have just made, that the answer is valid, establishes the allegations of insolvency in the bill, along with its other allegations. However, as the petitioner Green was allowed to present and did present a great deal of evidence upon this point, I may say that I think it clear that the property of the Boston & Maine Railroad, at a fair valuation, largely exceeds its debts. Indeed, no contention to the contrary is made. Speaking in the bankruptcy sense, the road is plainly not insolvent. But we are not dealing with insolvency here in that sense. What we mean by "insolvency" in this proceeding is the road's inability to meet its obligations as they mature in the ordinary course of business, and at the same time to carry on its business in a proper way and perform its public duties. This involves an examination of its salable assets (meaning those which could be sold without impairing its ability to carry on its business) and its borrowing power. The salable assets were by no means sufficient to provide for its maturing indebtedness. That could have been done only by borrowing.

"The evidence discloses differences of opinion about the respondent's borrowing capacity. As to whether the notes could have been again extended by a united effort, I think there is fair ground for difference of opinion. We have, however, the unanimous, deliberate judgment of the board of directors, concurred in by such financial men as they consulted, that it was not possible for the road to renew the notes in any satisfactory way, and that, if it did renew them, it would be simply temporizing with a situation which needed permanent relief. Upon that question I think that the honest judgment of the men in charge of the property is entitled to greater weight than the contrary opinion, expressed by persons not charged with any responsibility to make their forecast good. I think—and I find—that the allegations of insolvency in the bill are established, not only by the admission in the answer, but by the decided weight of the evidence.

"I will hold the case upon this question of law, whether the directors had the right and authority to do what they did in bringing about the receivership, which, as I understand it, is the question on which Mr. French desires to be heard. Upon that question the effect of the ratification by the stockholders and any other significant facts will be considered."

Those findings disposed of the disputed questions of fact. In connection with the law questions raised by the petitioners Streeter and Lawrence, certain other facts as to which there was little or no dispute should be stated.

For a period of at least two years preceding the filing of this bill it had been generally recognized that the financial structure of the Boston & Maine was unsound, and its financial position somewhat precarious. A radical reorganization was believed to be necessary by most of the persons in interest. Efforts had been made to obtain legislation for that purpose in the northern New England states and in Massachusetts. During this period the corporation was carrying a large floating debt, evidenced by outstanding notes of comparatively short terms. From time to time various issues of these notes fell due and were extended by the holders at the request of the respondent. Payments on account of the principal were made from the sale or exchange of securities owned by the respondent, transactions which showed a substantial loss to it. An important consideration in obtaining from the note holders the necessary extensions of their notes had been the fact that the management of the Boston & Maine was actively engaged in the effort to reorganize it. Under date of February 11, 1916, the stockholders were informed, in substance, that if the reorganization plans failed a receivership would probably be necessary. In the early summer of 1916 it became certain that the legislation necessary to a reorganization could not be obtained in the immediate future. There had been some difficulty before that in getting extensions on the notes becoming due, and it had been impossible for the management to be certain, much in advance of the dates when the notes actually became payable, whether enough of them would be extended to enable the company to continue.

In order to be ready for emergencies, a bill of complaint, praying for the appointment of receivers, had been prepared by counsel for the company in conference with Hon. Marcus P. Knowlton, the chairman of the federal trustees, and had lain in the files of the company. In August, 1916, this bill was taken from the files, the figures in it were brought up to date, and it was in other ways perfected and made ready for filing in court. The Intercontinental Rubber Company was requested to become complainant in the bill and to file it. It did so, upon the understanding that it would not be put to substantial expense by reason thereof. The request to the complainant was made with the knowledge and assent of the respondent's counsel, but no vote authorizing it was ever passed by the board of directors. The directors believed that a receivership was unavoidable, and those of them who were familiar with legal matters supposed that it would be brought about by a friendly suit filed in this court by a creditor residing outside of Massachusetts. The course taken was similar to that frequently, if not generally, adopted in receivership proceedings. It accords with the "silent practice of the court" (Illinois Central R. R. Co. v. Turrill, 110 U. S. 304, 4 Sup. Ct. 5, 28 L. Ed. 154), and was approved in the Metropolitan Railway Receivership Case, 208 U. S. 90, at page 110, 28 Sup. Ct. 219, 52 L. Ed. 403. It is objected to by the parties represented by Mr. French, but I see nothing to criticize in it. The directors of the respondent company unanimously voted that an answer be filed, admitting the allegations in the bill. The Rubber Company is a bona fide creditor of the respondent, as stated in the bill, upon notes held by it since 1913, which were not acquired

with any view to their use in proceedings of this character. Upon this bill and answer a temporary receiver was appointed on August 29, 1916.

Under date of September 5th a stockholders' meeting was called to see what action the stockholders of the respondent would take with reference to the bill of complaint and the proceedings of the board of directors regarding it, and their action in filing the answer above referred to. The call for the meeting was broad enough to bring the conduct of the directors in reference to the receivership up for action by way either of disaffirmance or ratification. The meeting was held on September 19, 1916. By a vote of 325,000 shares to 8,000, the action of the directors was fully ratified. No sufficient reason has been shown why the stock owned by the Boston Holding Company (i. e., that controlled by the federal trustees, amounting to 225,-000 shares) should not be considered on this vote. But, even if it be disregarded, more than 10 times as many shares voted to ratify the action of the directors as voted against such ratification.

[1] From the foregoing statement it is clear that the receivership proceedings were in reality brought about by the respondent itself. Its representatives, in doing so, acted after careful consideration, in entire good faith, and in the belief that a receivership was the best, if not the only, course open to the respondent in the circumstances in which it was placed; and their action was approved by the stockholders. The minority stockholders do not contend that they are being treated differently from the other stockholders. No disadvantages are being imposed on them which are not also imposed on the majority. No advantages are being received by the majority stockholders which are not equally shared by the minority stockholders. There is no suggestion that the owners of the majority stock are profiting in any way at the expense of the minority.

It is said by the objecting minority that one purpose which the directors had in mind in bringing about a receivership was to accomplish a reorganization of the company; that most of the directors have expressed approval of the principle of a certain plan of reorganization; that this plan is grossly unfair to the common stockholders of the respondent; and that a receivership is asked for as a means of coercing them into acceptance of it. There is no dispute that the directors regard a reorganization of the company as essential, nor that the majority of them are in accord with the outlines of a plan for such reorganization, nor that, after the hope of legislation was abandoned, a receivership was sought in part for the purpose of making it easier to accomplish a reorganization. That there was any intent on the part of the directors, or of the majority stockholders, to coerce the minority into such a reorganization through a receivership, is not established. Judge Knowlton, who is strongly opposed to the proposed plan of reorganization and has publicly stated his dissent therefrom, advised receivership and voted for it as a director.

The proposed plan of reorganization is in no sense fraudulent; under it the objecting stockholders are treated exactly like all other common stockholders. They object to it, not because of inequality or

discrimination in the treatment accorded them, but because in their judgment the respondent can go on without a reorganization, and because they fear an unfair reorganization. It is not to be overlooked that under a receivership the affairs of a corporation are, to a considerable extent, under the control of the court; and it is at least probable that the power of the court could be so exercised as to prevent an oppressive and unjust reorganization, if that were attempted. The management of a corporation rests with the owners of the majority of the stock. So long as they act honestly, they are entitled to carry out their judgment on business questions which arise, and in business difficulties to take such course as they deem best. The case presents to my mind nothing but an acute difference of opinion upon a matter of business policy and action between the directors and the owners of an overwhelming majority of the stock on one side and a comparatively small, but contentious, group of minority stockholders on the other, who appear to have resorted to charges of "fraud" or of "breach of duty" in an effort to obscure the exact nature of their real complaint.

The majority of the stockholders were not obliged, as a matter of law, to wait until the corporation was actually in default in the payment of its notes, and its property had perhaps been attached on mesne process for large amounts, nor to make efforts to secure further extensions which they believed it unwise, and perhaps unfair to noteholders, to ask for, before applying for a receiver. They had the right, if not the duty, to consider, not merely the present emergency, but the future conduct of the company's business, and its performance in a proper way of its duties to the public as a common carrier—a point to which the minority interests pay insufficient attention, as it seems to me. Whether the directors alone had power, without express authority from the stockholders, to initiate proceedings looking to the appointment of receivers and to the transfer of the corporation's property from its own hands to those of a receiver, it is not necessary to determine, because what the directors did in that respect was fully and completely ratified by the stockholders.

It is still true that, even if the directors and the majority of the stockholders acted in good faith and, as they believed, for the best interests of the corporation, the court is not absolutely bound to appoint a receiver as prayed for. It might, in the exercise of its discretionary power, refuse to do so, if confident that there was no real necessity for such action, and that the application was improvidently and unwisely made. The facts above stated sufficiently indicate that this is not such a case. Upon the facts as they appear, a receiver for the purposes of the bill ought to be appointed. The complainant may present a decree on due notice to other parties.