## HARRIS v. BROWN et al.

(District Court, W. D. Kentucky. July 15, 1925.)

1. Corporations ⨀393—Equity cannot interfere in removal of president by directors acting within their powers, no matter how harmful to corporation.

Equity cannot interfere with removal of president of a corporation by its board of directors, no matter how harmful removal may be to corporation, if board is legal board and possesses power of removal.

2. Courts ⨀328(3) — Jurisdictional requirement as to value of matter in dispute tested by value of property for protection of which suit is brought.

In stockholder's suit in federal court, to enjoin directors or officers of corporation from performing alleged harmful or illegal acts, value of matter in dispute for jurisdictional purposes is not tested by mere immediate pecuniary damage from acts complained of, but by value of business or property right for which protection is sought.

3. Courts ⨀329—Stockholder's bill in federal court, to enjoin alleged illegal acts of directors, held to affirmatively show jurisdictional amount.

A stockholder's bill in federal court, to enjoin alleged illegal operations of board of directors, held to show required jurisdictional amounts involved, where assets of corporation were shown to be $11,500,000.

4. Courts ⨀316—Stockholder's bill for benefit of parties may be brought in federal court on ground of diversity of citizenship.

Although federal court will look beyond mere formal alignment of parties by plaintiff to determine whether it has jurisdiction for diversity of citizenship, a stockholder's bill, by nonresident stockholder, to enjoin alleged illegal acts of board of directors, may be brought in federal court for the benefit of the corporation, notwithstanding interests of corporation and stockholder may be identical.

5. Courts ⨀316—Jurisdiction of federal court not defeated by naming as party defendant one who was interested in seeing plaintiff succeed.

Where stockholder's bill sought to enjoin alleged illegal acts of board of directors in deposing president of corporation, and named president as party defendant, jurisdiction of federal court held not defeated by citizenship of parties because interest of president was with plaintiff; president being unnecessary party to suit, or, if necessary, being one of class against whom injunction was directed.

6. Courts ⨀316—Stockholder's bill not collusive so as to justify dismissal.

Stockholder's bill by bona fide holder of long standing, who had been bona fide resident of state other than that in which corporation was located for many years, held not collusive, requiring dismissal under Jud. Code, § 37 (Comp. St. § 1019) or equity rule 27, merely because one of defendants who was not necessary party agreed with plaintiff that suit be brought in federal court, and because that defendant desired plaintiff to prevail.

7. Insurance ⨀35—Election by board of directors of members to fill vacancies on board held void.

Although articles of incorporation and bylaws of insurance company provided for certain number of directors, to be elected by stockholders at expiration of certain terms, which number was subsequently modified, and permit-

ted directors to fill vacancy during term until next election, where stockholders neglected to elect requisite number at regular meeting, election by directors to fill those vacancies *held* void under Ky. St. § 551; special stockholders meeting for such election being required.

In Equity. Stockholders' bill for injunction by Daniel W. Harris against James B. Brown and others. Preliminary injunction issued.

Miller, Dailey & Thompson, of Indianapolis, Ind., and Beckham, Hamilton & Beckham and Woodward, Warfield & Hobson, all of Louisville, Ky., for plaintiff.

Trabue, Doolan, Helm & Helm, Ben S. Washer, and Gardner K. Byers, all of Louisville, Ky., for defendants.

DAWSON, District Judge. This is a stockholders' bill, brought by an Indiana stockholder of the Inter-Southern Life Insurance Company, a Kentucky corporation, against that company and those acting as its board of directors and the insurance commissioner of the commonwealth of Kentucky and A. C. Ernst, an accountant appointed by the insurance commissioner to examine into and report to him the financial condition of the Inter-Southern Life Insurance Company.

The bill contains the formal allegations required to be made by equity rule 27, alleges diversity of citizenship between the plaintiff and the parties defendant, and that the amount in controversy exceeds the sum or value of $3,000, exclusive of interest and costs. The bill alleges that the plaintiff is now, and has been since 1916, the owner of 4,325 shares of the common capital stock of the defendant company, of the par value of $1 per share and of the actual value of $2 per share, that the defendant company has assets of $11,500,000 and has $106,-000,000 of insurance in force, and that there are issued and outstanding 675,000 shares of the common capital stock of the company, of the par value of $1 per share and of the actual value of $2 per share.

The causes of action attempted to be set up against the defendant Ernst and the defendant Saufley, as insurance commissioner, are so defectively stated, and, when viewed in the light of the testimony heard and the exhibits filed, are so lacking in merit, that on this hearing these phases of the case will be disregarded altogether.

As the court views the matter, the only real cause of action which can be constructed out of the allegations contained in the petition is that involving the right of the defendants James B. Brown, James C. Stone, C. C. Mengel, E. J. O'Brien, Jr., J. Graham Brown, Walter I. Kohn, T. B. Wilson and B. S. Washer, to act as members of the board of directors of the defendant company. In substance the bill in this respect states that the board of directors which had been regularly elected by the stockholders of the defendant company, and known in the record as the "old board," met on the 21st day of February, 1925, and elected the eight defendants last above named to act as members of the board of directors of the defendant company for the ensuing year. This action on the part of the board of directors is attacked as invalid, because it is alleged that none of these defendants were stockholders of the defendant corporation at the time of their attempted election by the board of directors, and for the further reason that at the time of their attempted election there were no vacancies existing which the board of directors was authorized to fill, under the provisions of section 551 of Kentucky Statutes.

It is charged that this board, as constituted after the addition of the eight named defendants, and known in the record as the "new board," organized and elected the defendant James B. Brown as chairman of the board of directors, and that ever since its organization has been acting as the board of directors of the defendant company. It is further claimed that under a call therefor issued by the defendant James B. Brown, as chairman of the new board of directors, a meeting of the board as now constituted would be held on July 9th, and a temporary restraining order, without notice, was asked for, to prevent the holding of this directors' meeting. At the time of the application for a temporary restraining order, counsel for a number of the defendants appeared in court, and, at the suggestion of the court, the proposed meeting of the board of directors was adjourned for one week, and the case then proceeded as if on application for a preliminary injunction, upon notice.

[1] The bill contains some allegations to the effect that, at the meeting called by James B. Brown, as chairman of the board of directors, it was proposed to remove the defendant Duffin as president of the company. This fact of itself, however, no matter how harmful the removal of Duffin might be to the company, would afford no basis for a court of equity to interfere. If the board is a legal board, it possesses the power to remove the president without the inter-

ference of the court; if not a legal board, then the threatened removal of the president would not be the basis upon which a court of equity would intervene at the suit of a stockholder, suing for the benefit of the corporation, but the real ground for the court's intervention would be the illegality of the board and its want of power to represent and act for the company in any matter whatever. Therefore the question of the removal of Duffin in this suit is not the subject of the controversy. The sole controversy which the court will consider is the right of the eight defendants, chosen as directors on February 21, 1925, to act as members of the board of directors.

The first question necessary to determine in this matter is the jurisdiction of the court, which is challenged by the defendants on three grounds: (1) That the jurisdictional amount is not involved; (2) that when there has been a proper realignment of parties, there is no diversity of citizenship; (3) that the suit is a collusive one.

[2] In injunction cases such as this one, it is now well setled that the value of the matter in dispute, for jurisdictional purposes, is not tested by the mere immediate pecuniary damage resulting from the acts complained of, but by the value of the business or property right for which protection is sought. Hunt v. New York Cotton Exchange, 205 U. S. 322, 27 S. Ct. 529, 51 L. Ed. 821; Bitterman v. L. & N. R. R. Co., 207 U. S. 205, 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693; Prest-O-Lite Co. v. Bournonville (D. C.) 260 F. 440; Larabee v. Dolley (C. C.) 175 F. 365; Humes v. City of Ft. Smith (C. C.) 93 F. 857; Board of Trade of Chicago v. Cella Commission Co., 145 F. 28 (8th Circuit), 76 C. C. A. 28; Bureau of National Literature v. Sells (D. C.) 211 F. 379; N. C. & St. L. Ry. Co. v. McConnell (C. C.) 82 F. 65; L. & N. R. Co. v. Smith, 128 F. 1 (5th Circuit), 63 C. C. A. 1; Jewell Tea Co. v. Lee's Summit, Mo. (D. C.) 198 F. 532; Evenson v. Spaulding, 150 F. 517 (9th Circuit), 82 C. C. A. 263, 9 L. R. A. (N. S.) 904.

[3] It must be borne in mind that the rights which the stockholder seeks to assert in this case are the rights of the corporation. Upon no other theory could he maintain this suit. Therefore the amount involved, for the purpose of testing the jurisdiction of this court, is the value of the property and property rights of the defendant company for which the plaintiff seeks protection. He seeks to have the corporation protected

against having its property and its business managed and administered by an alleged illegal board. The value of this property and of this business is the amount in controversy, within the meaning of the Judicial Code. The plaintiff affirmatively alleges that this is in excess of $3,000, exclusive of interest and costs. Furthermore it appears from the bill that the company has assets of $11,500,000, with $106,000,000 of insurance in force. In view of these allegations, the court has no hesitation in concluding that the jurisdictional amount affirmatively appears.

[4] Neither is there any merit in the defendants' contention that, when there is a proper alignment of parties, diversity of citizenship is lacking.

Defendants hinge their second objection to the court's jurisdiction upon the contention that, inasmuch as this is a suit for the benefit of the corporation and for the protection of the interests of the corporation, its interests and the plaintiff's interests are identical, and that likewise, inasmuch as the primary object of the suit is the retention of Duffin as president, and as the record discloses that he desires the plaintiff to win, his interests and the plaintiff's interests are identical; that, these facts appearing, it becomes necessary for the court to rearrange the parties so as to place them on that side of the litigation where their real interests lie. It is claimed that when this is done, the defendant corporation and Duffin will be made parties plaintiff, and that, they both being citizens of Kentucky, there will be no diversity of citizenship—consequently this court would have no jurisdiction.

The court has no disposition to question the general rule that, in determining whether it has jurisdiction or not, it is the duty of the court to look beyond the mere formal arrangement of the parties as made by the plaintiff, and to arrange the necessary parties according to their real interests. This rule, however, has never been invoked in stockholders' bills; if so, it would be impossible for a nonresident stockholder to ever bring a stockholders' bill in the federal court, no matter how flagrantly the officers of the company were violating their duty to the corporation and to its stockholders. This question is so well settled that it is no longer debatable. Dodge v. Woosley, 18 How. 331, 15 L. Ed. 401; Cotting v. Kansas City Stockyards Co., 183 U. S. 79, 22 S. Ct. 30, 46 L. Ed. 92; Doctor v. Harrington, 196 U. S. 579, 25 S. Ct. 355, 49 L. Ed. 606; Ven-

ner v. Great Northern Ry. Co., 209 U. S. 24, 28 S. Ct. 328, 52 L. Ed. 666.

[5] Counsel for the defendants do not seriously press their contention that the defendant corporation should be aligned with the plaintiffs for the purpose of defeating jurisdiction, but strenuously insist that the defendant Duffin should be so aligned. A sufficient answer to this suggestion would be that Duffin is not a necessary party to this suit, and, not being a necessary party, his presence in the suit cannot defeat this court's jurisdiction. The real controversy is as to the right of the eight men elected on February 21, 1925, to act as members of the board of directors. This could be determined fully and completely if only the corporation and these eight men were parties defendant. The only reason why it could be deemed at all material that the so-called old directors should be made parties defendant is in order that they, as members of the board, may be prohibited from taking part in the scheduled meeting in which the so-called new directors are planning to participate. The decision of this case will not in the slightest degree affect their standing as directors, and no injunction can issue to prevent their participation in the proposed meeting, unless it is first determined that the eight new members are not entitled to serve. Neither can it be said that Duffin's position as president is involved, and that therefore he is a necessary party. As heretofore pointed out, if the board is a legal one, it has a perfect right to remove Duffin, and this court has neither the authority nor the disposition to interfere. His removal would be illegal only in event the board which attempted it was illegal. If it be determined that the present board of twenty-three members is illegal, that does not protect Duffin in his position as president, because the old board is free to remove him, and, inasmuch as it appears from the exhibit filed with the answer that nine of the fifteen old board members are in sympathy with those in charge of the defense in this suit, it is not at all improbable that the old board would remove him.

All this leads us inevitably to the conclusion that the real controversy is as to the right of the new members to sit as directors, and that as to this controversy, standing alone, Duffin has no more interest than any of the other old members of the board. He is therefore not a necessary party because of any interest he may have personally in the controversy. As already suggested, if he should be deemed a necessary party, it could only be upon the theory that an injunction is necessary against him and all the other old members of the board to prevent them meeting with the new directors. The plaintiff contends that the old members have no right to sit with or to recognize any of the new members, or to participate in any meeting called by the defendant Brown. An injunction would not be necessary to prevent Duffin attending such meeting unless he proposes to attend it. If he proposes to attend for any reason, then he is doing that to which the plaintiff objects, and his action and interest in law are antagonistic to the plaintiff, no matter how much he may actually desire the plaintiff to win, and he cannot be aligned with the plaintiff so as to defeat jurisdiction. Doctor v. Harrington, 196 U. S. 579, 25 S. Ct. 355, 49 L. Ed. 606; Cotting v. Kansas City Stock Yards Co., 183 U. S. 79, 22 S. Ct. 30, 46 L. Ed. 92.

[6] Nor can it be said upon the record in this case that the suit is a collusive one, such as to justify the court to dismiss it, under section 37 of the Judicial Code (Comp. St. § 1019), or equity rule 27. There is no claim that the plaintiff's title to his stock is the result of a fraudulent or collusive transfer arranged between him and Duffin, or between him and any one else, for the sole purpose of conferring jurisdiction, as was the situation in Williams v. Nottawa, 104 U. S. 209, 26 L. Ed. 719, Lake County v. Dudley, 173 U. S. 243, 19 S. Ct. 398, 43 L. Ed. 684, and Bell & Howell Co. v. Bliss (C. C. A.) 262 F. 131. Plaintiff is the owner of the stock standing in his name, acquired long before the controversy in this case arose. There is no suggestion that the plaintiff moved to Indiana for the sole purpose of creating the necessary diversity of citizenship, and with no intent of becoming a resident of that state in good faith, as was true in the cases of Morris v. Gilmer, 129 U. S. 319, 9 S. Ct. 289, 32 L. Ed. 690, and Lehigh Min. & Mfg. Co. v. Kelly, 160 U. S. 327, 16 S. Ct. 307, 40 L. Ed. 444. He is an actual bona fide resident of Indiana, and has been such for many years. Nor is this a case of fraudulently misstating the facts necessary to confer jurisdiction, as in the cases of City of Dawson v. Columbia, 197 U. S. 176, 25 S. Ct. 420, 49 L. Ed. 713, and Lord v. Veazie, 8 How. 251, 12 L. Ed. 1067. From the defendants' viewpoint, at the most, this is simply a case where the plaintiff and one of the defendants (and he not a necessary defendant) agreed that the suit be

brought in the federal court (where, independent of such agreement, the plaintiff had a right to bring it), and in which that defendant wishes for the plaintiff to prevail. All the authorities agree that such a situation does not constitute collusion, as that term is used either in section 37 of the Judicial Code or in equity rule 27.

In the case of In re Reisenberg, 208 U. S. 90, 28 S. Ct. 219, 52 L. Ed. 403, the Supreme Court very clearly declares that such a state of facts does not constitute collusion. In speaking of the charge of collusion advanced in that case, the court says: "There is no collusion apparent in any legal sense. It is of course manifest that complainants and defendants were entirely in accord and arranged together that the suit should be brought in the federal court and that the averments of the bill should be admitted by the answer. But there was no colorable assignment of some claim to a citizen of another state, nor any misrepresentation or distortion of facts to mislead the court. On the contrary, examination of the books shows that the financial situation is precisely such as was averred in the complaint."

In the case of Toledo v. Toledo Railway & Light Co., 259 F. 450, 170 C. C. A. 426, the Circuit Court of Appeals for the Sixth Circuit, speaking through Judge Denison, in discussing the charge of collusion in that case, said: "It is necessarily to be deduced from, if not expressly ruled in, Blair v. Chicago, 201 U. S. 400, 448, 26 S. Ct. 427, 50 L. Ed. 801; Chicago v. Mills, 204 U. S. 321, 330, 27 S. Ct. 286, 51 L. Ed. 504; Re Metropolitan Receivership, 208 U. S. 90, 110, 28 S. Ct. 219, 52 L. Ed. 403; and see opinion of Judge Lacombe (Pennsylvania Steel Co. et al. v. New York City Ry. Co. [C. C.] 157 F. 440, 444); and Wheeler v. Denver, 229 U. S. 342, 350, 33 S. Ct. 842, 57 L. Ed. 1219—that a nonresident plaintiff has an absolute right to pursue, in a federal court, all his remedies against a resident defendant, and it makes no difference what his motive may be in electing the federal remedy. He may do so expressly because he wishes to keep the litigation out of the state courts; that is his constitutional right. See, also, Cowles v. Mercer Co., 74 U. S. (7 Wall.) 118, 122, 19 L. Ed. 86. So, it is wholly immaterial whether the defendant, in acquiescing in the plans for a federal forum, is inspired by the same motives. If the consent of the defendant were important to the jurisdiction, that would be another question; but, where the plaintiff's right to choose that forum is absolute and defendant's opposition cannot impair it, no more can defendant's consent do any harm."

The same principle is applied in the cases of Wheeler v. City of Denver, 229 U. S. 342, 33 S. Ct. 842, 57 L. Ed. 1219; Inter-Continental Rubber Co. v. Boston & Maine R. R. (D. C.) 245 F. 122; Blair v. Chicago, 201 U. S. 400, 26 S. Ct. 427, 50 L. Ed. 801; City of Chicago v. Mills, 204 U. S. 321, 27 S. Ct. 286, 51 L. Ed. 504; and Helm v. Zarecor, 222 U. S. 32, 32 S. Ct. 10, 56 L. Ed. 77. This is not a case where the defendant Duffin could have prevented the threatened action, but refrained from doing so in order to enable a nonresident stockholder to bring suit in the federal court. The action complained of in this case is the serving of the so-called eight new directors as members of the board. Of course, those eight members cannot be expected to volunteer to refrain from serving, and, from the exhibit filed with the answer in this case, it is apparent that at least nine of the old directors are favorable to their continued service as directors. It is therefore manifest that Duffin, against whom the charge of collusion is leveled, is powerless by any act of his to control the situation of which the plaintiff complains.

From all the foregoing considerations, the court is of the opinion that it has jurisdiction of the cause of action set up in the bill, and that there is apparent no such fraud or collusion between the plaintiff and Duffin as to authorize the court to dismiss same.

[7] This brings us to a consideration of the validity of the election of the eight defendants as directors on February 21, 1925. The Articles of Incorporation provide:

"The affairs of the corporation will be conducted by a board of directors of not less than fifteen (15), nor more than thirty-six (36). No person shall be eligible to election as a director unless he shall be a stockholder, having not less than 100 shares of stock in his own name.

"The board of directors shall be divided into three classes, an equal number in each class; and directors shall be elected to serve for a term of three years, except as hereinafter stated.

The first board of directors shall consist of thirty-six members, one-third of whom shall be elected to serve until the annual election in 1916, one-third until the annual election in 1917, and one-third until the annual election in 1918.

"The first election of directors shall be at

a meeting of the stockholders of the consolidated company, hereby created, which meeting shall be held ten days after the execution of these articles of incorporation, of which meeting notice shall be given to the stockholders in writing, signed by the secretaries of the two constituent corporations which are to be hereby consolidated, which notice, however, including the signatures of the said 'secretaries, may be printed.

"Beginning with the year 1916, there shall be an annual meeting of the stockholders of the corporation to be held at the principal office of the company, on the third Wednesday in January, for the election of directors, and the transaction of such other business as may be properly brought before it.

"Vacancies in the board of directors shall be filled by the board, and the directors so appointed shall hold office until the next annual election. And at the annual election directors shall be elected to fill the places of those whose terms expire at that time. All elections shall be for the term of three years, except in case of an election to fill a vacancy occurring during a term, in which event the election shall be for the unexpired portion of the original term.

"At any annual meeting the stockholders may, by a vote of a majority of the outstanding stock, reduce the number of directors to any number, not less than fifteen (15). Thereupon the office of all directors shall cease and the stockholders shall proceed to elect the entire board of directors so fixed, assigning them to three classes, as nearly equal as possible, the first class to serve for one year, the second for two years, and the third for three years.

"This right and method of reduction of the number of directors may be exercised as many times as the stockholders shall desire. The stockholders may also, at any meeting, reduce the number of directors by designating in a resolution what vacancies then existing in any class shall not be filled; provided, however, the number of directors shall never be reduced below fifteen (15)."

If the plan outlined in the articles of incorporation had been followed, thirty-six directors would have been elected by the stockholders at the called meeting in 1915, following the execution of the Articles of Incorporation, and, beginning with the annual stockholders' meeting in 1916, twelve directors would have been elected each year. As a matter of fact, however, this was not done. The first board consisted of only thirty-four members, and the record contains no ex-

planation of why the other two places were left unfilled. From that time on, as a serving director would die or resign, or disqualify for any reason, the place formerly held by him on the board would be left unfilled by the board of directors during the interim between the date of his death or disqualification and the next annual stockholders' meeting, and at such meeting the stockholders would likewise leave his place unfilled. This practice was followed without a break until the annual stockholders' meeting in January, 1922. This was the regular date for electing class 1 directors. There were twelve such places on the board, but only ten were serving at the date of the annual election. The stockholders at this election re-elected not only the ten then serving, but elected two men to fill the other two places at that time unfilled. This was the first time the stockholders at their annual stockholders' meeting elected men to fill places which had become vacant as the result of death or disqualification of former incumbents. At the January, 1923, stockholders' meeting, the board passed this resolution, known in the record as the "Helm Bruce" resolution:

"Whereas, it is provided in the Articles of Incorporation of the Inter-Southern Life Insurance Company that the board of directors shall consist of not less than fifteen nor more than thirty-six members; and

"Whereas, it was provided that the original board of directors should consist of thirty-six members; and

"Whereas, a number of vacancies have, from time to time, been left unfilled; and

"Whereas, the Articles of Incorporation provide that the number of directors may be reduced at any meeting of the stockholders by a resolution to the effect that certain vacancies shall not be thereafter filled; and

"Whereas, it is the sense of this meeting of stockholders that the number of directors should be reduced for the present:

"Now, therefore, be it resolved that until further action of the stockholders, vacancies in the following number and in the following classes of directors be not hereafter filled, to wit: One vacancy in class No. 1, thus reducing the number of directors in class No. 1 to eleven; six vacancies in class No. 2, thus reducing the directors in class No. 2 to six; five vacancies in class No. 3, thus reducing the number of directors in class No. 3 to seven."

This was the year in which to elect class 2 directors. If the resolution had been complied with, six directors of this class would

have been elected. However, only four were elected by the stockholders; no provision of record being made as to filling the other two places. In April, 1923, the board of directors elected a director to fill a vacancy caused by the death of one of the regularly elected directors who had died since the stockholders' meeting in January. At the July, 1923, meeting of the board of directors, the board elected four directors—one to fill a vacancy caused by a resignation tendered at that meeting; one to fill a vacancy caused by the death of a regularly elected director which had occurred since the April meeting; and two to fill the two places left unfilled by the stockholders at the annual meeting of January, 1923. This is the only instance in which the board of directors, prior to February 21, 1925, ever undertook to elect men to fill places on the board which had been left unfilled by the stockholders at their annual election of directors.

The annual stockholders' meeting in 1924 was the date for the election of class 3 directors, but only six of the seven directors in that class, as fixed by the Bruce resolution, whose terms of office expired at that meeting, were re-elected. One place was left unfilled, with no explanation on the record for so doing. The board of directors never attempted to fill this place. During that year, by resignation and death, eight other vacancies occurred, but the board did not fill any of these. So, at the next annual stockholders' meeting, only fifteen directors were in office and serving.

The annual stockholders' meeting in January, 1925, was the date for the election of directors of the first class, and according to the Bruce resolution, there were eleven to be elected. However, only five of this class were serving at the date of the annual meeting, and only these were elected. No action of record whatever was taken as to the other six places. It is claimed by Mr. Stanley Reed and Mr. Regenstein, however, that Mr. Duffin stated to the stockholders that these places would be later filled by the board of directors. Mr. Saufley states that Mr. Duffin simply said that they expected to fill them later on. It is clear that Saufley got no impression from the statement of Duffin as to how these places would be filled. Whatever may be the truth about this matter, it is apparent from the proof and the records of the corporation that up to the stockholders' meeting of 1925 there had been no general practice on the part of the board of directors of filling places which had been left unfilled by the stockholders at their annual

meeting. On the contrary, the general practice was that the action of the stockholders in leaving places unfilled was acquiesced in by the board of directors, with no attempt on the part of the board to do that which the stockholders had failed to do. So, with much reason, it might be said that this continuous practice, acquiesced in both by the stockholders and the board of directors, had assumed the importance of a by-law, and that the board of directors was bound by this practice and custom, and was therefore without authority to fill places which had been left unfilled by the stockholders. However, the court prefers not to rest its decision as to the legality of the election of February 21, 1925, upon this ground. Neither does the court deem it necessary to determine whether or not the Helm Bruce resolution had the effect of fixing the exact number of directors thereafter to be elected or merely reduced the maximum from thirty-six to twenty-four. As the court views this case, that question is immaterial, so in the further discussion of the question that resolution will be treated as if it had the effect of definitely fixing the number of directors thereafter to be elected.

Defendants contend that when the stockholders at their annual meeting left a place on the board unfilled, whether that place was for an unexpired term or was one regularly to be filled at that meeting, such nonaction on the part of the stockholders created a vacancy, which the board of directors had the right to fill until the next annual meeting of stockholders. In support of this contention, they cite the general definition of the word "vacancy," as given by the lexicographers, and the cases of Elliott v. Burke, 113 Ky. 479, 68 S. W. 445, 24 Ky. Law Rep. 292; Dixon v. Caudill, 143 Ky. 623, 136 S. W. 1043, and Yates v. McDonald, 123 Ky. 596, 96 S. W. 865, 29 Ky. Law Rep. 1056. These cases have no application to this case, however, because they were each dealing with a vacancy in a public office, and were necessarily controlled by section 1521 of Kentucky Statutes, which defines what shall constitute a vacancy in a public office. This section is as follows: "The term 'vacancy in office,' or any equivalent phrase, as used in this article, means such as exists when there is an unexpired part of a term of office without a lawful incumbent therein, or when the person elected or appointed to an office fails to qualify according to law, or when there has been no election to fill the office at the time appointed by law. It applies whether the vacancy is occasioned by

death, resignation, removal from the state, county or district, or otherwise."

It will be readily seen that in view of this statute the three Kentucky cases relied upon by the defendants are of no controlling weight in determining what constitutes a vacancy in the board of directors of a private corporation. It seems to the court that section 551 of Kentucky Statutes, from which the board of directors draws its power to fill vacancies, is so plain on the subject that there can be no room for a difference of opinion, and therefore general definitions of the word "vacancy" cannot be allowed to control. This section, in so far as pertinent to the question now under discussion, is as follows: "The affairs of each corporation shall be managed by a board of not less than three directors, each of whom shall own in his right not less than three shares of capital stock; they shall hold office until their successors are respectively elected and qualified, and a majority of them shall constitute a quorum for the transaction of business. All elections for directors shall be by ballot, and shall be held in this state; and, in the first instance, the directors shall be elected at a meeting held before the corporation is authorized to commence business, and thereafter at an annual meeting of the stockholders to be held on the day named in the by-laws, and which shall not be changed within sixty days next before the day on which the election is to be held, and notice of any change shall be given to each stockholder twenty days before the election is held; and if, for any cause, an election is not held on the day named in the by-laws, a special meeting for that purpose shall be called within thirty days thereafter, of which due notice shall be given to each stockholder, in person or by letter mailed to his last known address. A stockholder may vote at any meeting by proxy, in writing, signed by him, and attested in such manner as the by-laws may prescribe; and a vacancy in the board of directors shall be filled by the board, and the directors so appointed shall hold office until the next annual election."

It will be observed that the board of directors is given the right to fill vacancies in the board until the next annual election, but we are not left in doubt about who shall elect directors, where the stockholders at such annual election fail for any reason to fill places then due to be filled. It is expressly declared: " *    *    * And if, for any cause, an election is not held on the day named in the by-laws, a special meeting for that purpose shall be called within thirty days there-

after, of which due notice shall be given to each stockholder, in person or by letter mailed to his last known address."

As clearly as language can express it, this section declares that if, when the time comes to elect directors, the stockholders fail to do so, such failure creates in the board of directors no right to fill the places which the law declares it the right and duty of the stockholders to fill. On the contrary, it provides that the officers of the corporation must again call the stockholders together, for the purpose of filling these places, and that due notice must be given each stockholder of such meeting. This statute shows that it was intended to prevent the stockholders from delegating to the board, and the board from usurping the right and duty of the stockholders to elect the board of directors. Under its terms, it was as much the right and duty of the stockholders at the annual meeting in January, 1925, to elect all the directors then due to be elected as to elect a part of them. Neither the whole nor a part of this right and duty could be delegated or surrendered to the board. If the board wanted the other places filled, its only authority was to again call the stockholders together for that purpose. Therefore we are inevitably driven, by the language of the statute, to the conclusion that the only vacancies which the board of directors is authorized by this section to fill are those vacancies arising after the stockholders, either at their annual meeting, or at a called meeting held for that purpose, have first filled all the places which were due to be filled at the annual stockholders' meeting.

Entertaining this view of the law, it of course follows that the court is of the opinion that the attempted election by the then board of directors, on February 21, 1925, of the eight defendants, James B. Brown, James C. Stone, C. C. Mengel, E. J. O'Brien, Jr., J. Graham Brown, Walter I. Kohn, T. B. Wilson, and B. S. Washer, was in violation of section 551 of Kentucky Statutes, and therefore void. This conclusion renders it unnecessary for the court to determine the eligibility of those defendants for election as directors. It necessarily follows from this conclusion that the attempted election of Mr. Brown as chairman of the board of directors was illegal, as he was not qualified to serve in such position, even if it be conceded that the by-laws creating that position were legally adopted. Therefore his attempted call for a meeting of the board of directors, which meeting it is sought to enjoin in this case, was without authority.

It is proper for the court to state that the proof all shows that, in the attempted election of the eight new directors, all parties were acting with the utmost good faith, and from a sincere desire to serve the company, but good faith cannot be allowed to override the plain provisions of the law.

A preliminary injunction will · issue against each of the defendants James B. Brown, Stanley Reed, James C. Stone, Charles C. Mengel, E. J. O'Brien, Jr., J. Graham Brown, Walter I. Kohn, T. B. Wilson, Ben S. Washer, J. A. Donaldson, Earl S. Gwin, William E. Massie, James F. Ramey, Ellsworth Regenstein, Edward F. Peter, D. C. Stimson, C. I. Hitchcock, W. B. Stanfield, George O. Summers, M. M. Parrish, James R. Duffin, W. W. Moore, and C. B. Nordeman, enjoining and restraining them from attending any meeting of the board of directors, or adjournment thereof, called by the defendant James B. Brown, and enjoining and restraining the defendants James B. Brown, James C. Stone, C. C. Mengel, E. J. O'Brien, Jr., J. Graham Brown, Walter I. Kohn, T. B. Wilson, and B. S. Washer, from in any capacity acting or attempting to act as members of the board of directors of the defendant company under the election of February 21, 1925, and enjoining and restraining the defendant James B. Brown from acting or attempting to act as chairman of the board of directors of said corporation. The motion for a temporary injunction against the defendants Saufley and Ernst is denied.